PRUDENTIAL INSURANCE COMPANY, Plaintiff-Appellant, v. EDWARD ROMANELLI *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—91—2779

Opinion filed February 16, 1993.

Cassiday, Schade & Gloor, of Chicago (Brian J. Hickey, of counsel), for appellant.

Fraterrigo, Best & Beranek, of Chicago (Michael T. McCormick, of counsel), for appellees.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Plaintiff-appellant, Prudential Insurance Company (Prudential), appeals from the trial court's order granting defendants' motion for a directed verdict entered after presentation of Prudential's case in chief. Prudential, as the subrogee of its insured, Agnes Nierman (Nierman), sought contribution from nonsettling defendants Edward Romanelli (Romanelli) and Abel Solorio (Solorio) in an underlying automobile accident negligence case.

On appeal Prudential contends that the trial court erred by requiring it to pursue the action in its own name rather than the name of its insured, Ms. Nierman, after Prudential settled with the injured parties on her behalf. It also contends that the trial court erred in granting defendants' motion for a directed verdict.

On January 14, 1989, a multicar accident occurred in the southbound lanes on an overpass on Illinois Route 53 where the highway passes over Northwest Highway. The speed limit in this section of roadway is 55 miles per hour. At the time of the accident, the roads were slick and icy as a result of snow being on the roadway.

The first car in this four-car accident was driven by Prudential's insured, Ms. Nierman, in the center lane of the three-lane highway (hereafter Nierman vehicle). Driving approximately two car lengths behind her in the center lane was Mr. Romanelli (hereafter Romanelli vehicle). Behind the Romanelli vehicle in the middle lane was a mini-van driven by Harvey Melamed (hereafter Melamed vehicle). His wife, Francine Melamed, was a passenger seated in the front seat of the Melamed vehicle. The fourth vehicle was driven by Mr. Solorio, in the right-hand lane about four to five car lengths behind the Melamed vehicle.

Ms. Nierman testified that she applied her brakes as she approached the point where Route 53 overpasses Route 14. She did not know that bridges ice and freeze over before roadways. When Ms. Nierman applied her brakes, she lost control of her vehicle and began to spin. She did not take notice of the cars behind her.

Mr. Romanelli testified that in an attempt to avoid the Nierman vehicle he applied the brakes and tried to change lanes; however, when he slammed on the brakes the wheels locked up. Thus, his efforts were unsuccessful and the Romanelli vehicle hit the passenger side of the Nierman vehicle. Mr. Romanelli further testified that he was travelling between 30 to 35 miles per hour and that he paid no attention to the traffic behind him.

When the Romanelli vehicle struck the Nierman vehicle, it made the Nierman vehicle spin more. In the interim, observing the accident in front of him, Mr. Melamed moved into the right-hand lane and came to a complete stop. After being struck by the Romanelli vehicle, the Nierman vehicle continued to spin, slid into the right-hand lane and struck the Melamed van.

Meanwhile, Mr. Solorio was approaching the Melamed vehicle from the right-hand lane. He testified that before the accident, he was driving about 30 miles per hour four to five car lengths behind the Melamed van when he first saw its brake lights and noticed it

had stopped. Mr. Solorio then slowed down his car and looked to see if he could move into the left-hand lane; however, there were cars in the left lane which prevented him from doing so. He then applied his brakes; however, because of the snow and ice, the Solorio vehicle began to slide, which prevented him from steering the car before also striking the Melamed van. As a result of the accident, Mr. and Mrs. Melamed sustained some injury.

On May 23, 1989, Mr. Melamed filed a complaint at law against Ms. Nierman alleging negligence. On June 6, 1990, Ms. Nierman filed a third-party complaint for contribution against Mr. Romanelli and Mr. Solorio. Thereafter, Mr. Melamed filed a first amended complaint naming his wife Francine and himself as plaintiffs. They then filed their second amended complaint at law naming Ms. Nierman, Mr. Romanelli and Mr. Solorio as defendants. Following discovery, the case was continued for status, pretrial or trial to June 25, 1991.

On June 25, 1991, the cause came before the court for pretrial. The court's order of that date ruled, *inter alia*, that the Melamed complaint against all defendants was dismissed pursuant to a settlement agreement between the Melameds and Ms. Nierman; that the Nierman third-party complaint for contribution against counterdefendants Romanelli and Solorio was continued; and that the releases of the Melameds were incorporated therein. Ms. Nierman also filed an amended complaint for contribution against Mr. Romanelli and Mr. Solorio pursuant to the Illinois Contribution Act. Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.*

Thereafter, defendant Solorio filed a motion to strike and dismiss the Nierman complaint for contribution pursuant to section 2—403 of the Illinois Code of Civil Procedure (see Ill. Rev. Stat. 1989, ch. 110, par. 2—403), for failure to name a proper party plaintiff. He alleged since Ms. Nierman's insurer, Prudential, settled with the Melameds, Prudential had to pursue the counterclaim in its own name. The trial court granted the motion to strike and dismiss. However, on July 16, 1991, the court permitted Prudential, as the subrogee of Agnes Nierman, to file an amended complaint for contribution in the name of Prudential.

The Nierman attorneys, who also represented Prudential, filed a motion for reconsideration of the court's order asserting that Ms. Nierman was the real party in interest pursuant to the Contribution Act and that as her insurer Prudential was not entitled to recover directly from the counterdefendants. Prudential maintained that the Nierman complaint for contribution was not a subrogation action.

The motion for reconsideration was denied. Nierman's complaint was stricken and leave was granted allowing Prudential to pursue the action in its name as the proper party plaintiff.

Trial was held on July 16 and July 17, 1991. Following the presentation of Prudential's case in chief, defendants moved for a directed verdict. The trial court granted the motion and this appeal followed. We affirm in part, reverse in part, and remand for a new trial. Our reasons follow.

Prudential contends that the trial court erred by requiring it to pursue the contribution claim against defendants in its own name. Prudential asserts that Illinois does not allow direct actions against insurance companies as they are against public policy, for fear of an award on behalf of the tort-feasor under the "deep pockets" theory. Here, it contends, a jury might be inclined not to award an insurance company proceeds against two individually named defendants.

■ In the present case, contrary to Prudential's contention in the court below, we believe it became the subrogee of Ms. Nierman pursuant to section 2(f) of the Contribution Act. (Ill. Rev. Stat. 1989, ch. 70, par. 302(f).) Section 2(f) provides in relevant part:

> "Anyone who, by payment, has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full his obligation to the tortfeasor, is subrogated to the tortfeasor's right of contribution." (Ill. Rev. Stat. 1989, ch. 70, par. 302(f).)

Thus, Prudential became subrogated to Ms. Nierman's right of contribution once it paid funds on her behalf to the Melameds in exchange for their general releases in the underlying negligence action.

■ Defendants correctly assert and we agree that Prudential was the actual party in interest as the subrogee and that based upon the record Ms. Nierman no longer had any interest in the subrogated claim. (See *Blatz v. City of Rock Falls* (1982), 105 Ill. App. 3d 732, 434 N.E.2d 807.) This court has held that the interest of the subrogee cannot be concealed in any proceeding brought for its benefit, but it must be either named as the plaintiff or disclosed as the real party in interest (see *Shaw v. Close* (1968), 92 Ill. App. 2d 1, 235 N.E.2d 830; Ill. Rev. Stat. 1989, ch. 110, par. 2—403). Section 2—403 of the Illinois Code of Civil Procedure provides:

> "Any action hereafter brought by virtue of the subrogation provision of any contract or by virtue of subrogation by operation of law shall be brought either in the name or for the use of the subrogee; and the subrogee shall in his or her

pleading on oath, or by his or her affidavit if pleading is not required, allege that he or she is the actual bona fide subrogee and set forth how and when he or she became subrogee." Ill. Rev. Stat. 1989, ch. 110, par. 2—403(c).

■■ We have reviewed the record and find no mention of an argument by Prudential in reliance upon section 2—403. Although Prudential had the alternative of bringing the action in its own name as mandated by the trial court or for the "use of the subrogee," absent such an argument as evidenced in the record on appeal, we cannot say the trial court erred when it required Prudential to pursue the action in its own name. Accordingly, we affirm the trial court's ruling on this issue.

Because we reverse and remand this matter for a new trial with respect to the court's ruling on the motion for directed verdict, we would be remiss were we not to mention that the issue concerning the proper party plaintiff may surface again. Thus, we instruct the trial court on remand to follow the dictates of section 2—403(c) of the Code of Civil Procedure. We believe that Prudential will meet the letter of the law where it, as subrogee, either (1) brings the action in its own name or (2) discloses in the pleadings or otherwise by oath or affidavit that it is the actual *bona fide* subrogee and then sets forth how and when it became the subrogee.

We now address the propriety of the directed verdict entered on behalf of defendants at the close of Prudential's case in chief. The trial court may direct a verdict at the close of the evidence, only where all evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The trial court's ruling on a defendant's motion for directed verdict will not be reversed on appeal unless the verdict is contrary to the manifest weight of the evidence. See *Hemken v. First National Bank* (1979), 76 Ill. App. 3d 23, 394 N.E.2d 868.

On appeal, Prudential argues that sufficient evidence was presented by it, in the very least, to survive a motion for directed verdict. On the other hand, Mr. Romanelli and Mr. Solario urge that the directed verdict in their favor was entirely proper since the testimony introduced by Prudential in its case in chief overwhelmingly favored the defendants. Defendants specifically contend there was absolutely no testimony: (1) that they followed the vehicle in front of them too closely; (2) that they operated their vehicles at a rate of

speed greater than what was reasonable and proper; or (3) that they failed to take adequate steps to avoid a collision.

Mr. Romanelli relies on the case of *Eikey v. Rapp* (1990), 205 Ill. App. 3d 46, 56 N.E.2d 1274, where the *Eikey* complaint alleged that defendant failed to keep a proper lookout and that she suddenly decreased the speed of her vehicle. In affirming the trial court's grant of summary judgment, this court held that there was no factual basis to support the allegations in the complaint that defendant suddenly decreased her speed, that she was travelling faster than that which was reasonable for the conditions, or that she failed to keep a proper lookout.

We believe the *Eikey* case is distinguishable from the instant case. On appeal from a directed verdict, a reviewing court must examine the evidence to determine whether, as a matter of law, there is evidence in the record to prove the essential elements of the plaintiff's case. (See *Mamolella v. First Bank* (1981), 97 Ill. App. 3d 579, 423 N.E.2d 204.) The evidence presented at trial revealed that Mr. Romanelli was driving his car only two cars behind the Nierman vehicle at 30 to 35 miles per hour on an icy and snowy roadway. Mr. Solorio by his own testimony also was driving about 30 miles per hour. He was the farthest away and even saw the Melamed brake lights, yet he stated he was unable to avoid the collision after trying to do so. On the other hand, Mr. Melamed stated that he was driving about 15 miles per hour.

The factual determinations as to whether or not the parties were travelling too close behind vehicles and whether or not the parties were driving their automobiles at a greater speed than was reasonable and proper given the weather and road conditions are questions for the jury. Where a factual dispute is disclosed, the question of a party's due care or negligence should be given to the jury for determination. *Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 449 N.E.2d 211.

Based on the foregoing, we believe Prudential's case in chief established a factual basis to support the allegations in its complaint that defendants followed too closely the vehicles in front of them and at a rate of speed greater than what was reasonable and proper under the circumstances. In the very least, a question of fact remained for the jury, given proper instructions, as to what was reasonable under the circumstances considering that the evidence shows: the highway was icy as the result of a sleet storm or ice storm; that at least one of the defendants was driving a closer distance behind the cars in front of him than Mr. Melamed; that

defendants' cars were proceeding at a speed, although lower than the limit, greater than that of the Melamed vehicle immediately prior to the accident; and that neither defendant was able to take precautions to avoid the collision although one defendant was closer in proximity than the Melamed vehicle and the other was farther away while the Melamed vehicle was able to slow down, pull over and stop.

■■ We find that the evidence, when viewed most favorably to Prudential and its insured, did not so overwhelmingly favor defendants that no contrary verdict based on evidence could stand under Prudential's contribution claim. Prudential's claim, on behalf of its subrogee, alleged negligence on the part of defendants, joint tortfeasors. In the very least, questions of fact remain to be decided by the trier of fact as to whether or not the defendants were contributorily or comparatively negligent. It is not required that a trial court's findings of law be shown to be incorrect before its grant of motion for a directed verdict can be overturned, but, rather a directed verdict can stand only if it is impossible for a contrary verdict, based on the evidence, to stand. (See *Bailey v. City of Decatur* (1977), 49 Ill. App. 3d 751, 364 N.E.2d 613.) We cannot say such a situation exists here. The jury may have reached a contrary verdict after hearing all the evidence in defense of the action, having heard all the witnesses, having listened to Prudential's rebuttal case, and having received the proper instructions on the law.

Accordingly we believe that the grant of a motion for directed verdict at the close of Prudential's case in chief was improper and we reverse and remand to the trial court for a new trial.

Affirmed in part; reversed in part and remanded for a new trial.

CAMPBELL and O'CONNOR, JJ., concur.