CIRILIO OREJEL et al., Indiv. and as Adm'rs of the Estates of J. Jesus Orejel, et al., Plaintiffs-Appellees, v. YORK INTERNATIONAL CORPORATION, INC., et al., Defendants (York International Corporation, Inc., Counterplaintiff-Appellee; William H. Wantuck, d/b/a Wantuck and Sons, et al., Counterdefendants-Appellants).

First District (3rd Division)   Nos. 1—96—0246, 1—96—0306, 1—96—0307, 1—96—0309 cons.

Opinion filed March 26, 1997.

Cremer, Kopon, Shaughnessy & Spina, of Chicago (Francis A. Spina and Julie A. Bruch, of counsel), for appellant William V. Wantuck.

Frank C. Rowland and Paul A. Michalik, both of Rooks, Pitts & Poust, of Chicago, for appellant Grayson Controls.

Ross & Hardies, of Chicago (William J. Winger and Barbara Baran, of counsel), for appellant Peoples Gas Light & Coke Company.

Esther Joy Schwartz, of Stellato & Schwartz, Ltd., of Chicago, for appellant K&K Heating & Air Conditioning Company.

D. Kendall Griffith, of Hinshaw & Culbertson, of Chicago, for appellant American Gas Association.

Charles W. Douglas, Sheila A. Sundvall, and Theodore T. Chung, all of Sidley & Austin, of Chicago, for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, the independent administrators of the deceased, brought wrongful death and survival claims to recover for the deaths of 10 family members who died as the result of carbon monoxide poisoning. Defendant York International Corporation (York) entered a $10 million settlement agreement with plaintiffs, releasing York as well as other defendants from further liability. Various defendants, including York, asserted counterclaims and third-party claims in the underlying action, which are still pending before the trial court. The trial court found that the settlement was made in good faith and was fair and reasonable in its amount. Certain defendants appealed the trial court's decision, contending that: (1) the good-faith provisions of the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1992)) do not apply to the settlement reached between York and the plaintiffs; (2) the trial court erred in denying their right to have a jury determine the amount against which their contribution liability, if any, would be assessed; and (3) the trial court erred in refusing to require that York's insurance carrier be identified as a real party in interest in the prosecution of York's contribution counterclaim. York also appeals, contending that contribution defendant K&K Heating and Air Conditioning, Inc., failed to file a timely notice of appeal.

## BACKGROUND

The underlying action brought by plaintiffs arises out of the deaths of J. Jesus Orejel, Sr., his wife, Graciela Orejel, Sr., and their eight children. The Orejel family died of carbon monoxide asphyxiation on or about November 8, 1991, when a lethal level of carbon monoxide escaped into their home from a breach in the vent system of their furnace. In their sixth amended complaint, plaintiffs, the independent administrators of the estates of the decedents, asserted

claims of negligence and/or strict liability under the Illinois Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 1992)) and the Illinois Survival Act (755 ILCS 5/27—6 (West 1992)) against the following corporations and individuals: York; K&K Heating and Air Conditioning, Inc. (K&K); Marzullo Furnace Supply Company (Marzullo); Jose Duenas, d/b/a Airworks Heating and Cooling (Duenas); R&D Mechanical, Inc.; David Grubisic; Joseph Grubisic; Grubisic Heating and Air Conditioning; Grayson Controls (Grayson); William V. Wantuck, d/b/a Wantuck & Sons (Wantuck); All City Heating and Cooling, Inc. (All City)[1]; White Rodgers, Inc.[2]; Park Heating & Air Conditioning Supply, Inc., a/k/a Park Supply, Inc. (Park Supply); Z-Flex U.S., Inc. (Z-Flex); Flexmaster Canada, Ltd. (Flexmaster); Hart & Cooley, Inc. (Hart & Cooley); and the American Gas Association (AGA). The complaint alleged that the defendants were involved in the design, manufacture, certification, sale, distribution, installation, inspection, service and/or repair of the subject furnace and/or certain of its component parts.

Plaintiffs alleged in their complaint that the decedents did not die instantly upon being exposed to the carbon monoxide emitted from the breached vent system but, instead, suffered great pain from the moment of their initial exposure until the time of their respective deaths, as evidenced by the location and condition in which each of the decedent's bodies was found. Plaintiffs further alleged that, between them, J. Jesus Orejel, Sr., and Graciela Orejel, Sr., left 17 surviving next of kin.

On December 10, 1993, York filed counterclaims seeking contribution from each of the named defendants and filed a third-party complaint against the Peoples Gas Light and Coke Company (Peoples Gas), which had inspected the subject furnace on at least two occasions prior to the accident. Most other defendants also filed counterclaims against most, if not all, of their codefendants.

In February and March of 1995, counsel for York contacted counsel for all codefendants (except those that were not known to have insurance coverage) and advised them that York was interested in assembling a settlement package to offer plaintiffs. York would assume the lead in settlement negotiations with plaintiffs. York's

---

[1]On December 15, 1994, by plaintiffs' agreement, All City was dismissed from this action on its uncontested motion for summary judgment; consequently, all counterclaims against All City were also dismissed.

[2]On March 8, 1995, the circuit court granted White Rodgers' motion for summary judgment on plaintiffs' complaint and on August 21, 1995, granted White Rodgers' related motion on all counterclaims for contribution.

counsel also requested the names of the insurance representatives and sought their participation in a possible global settlement. Thereafter, York contacted the various codefendants' insurers and/or counsel and sought their contribution to such a settlement. However, York was met with strong resistance by other defendants and was unsuccessful.

Nevertheless, York pursued settlement discussions with lead counsel for plaintiffs. On April 19, 1995, following extensive negotiations, York and plaintiffs orally reached a settlement agreement to pay plaintiffs $10 million in exchange for plaintiffs' agreement to release and extinguish their claims against York and all other codefendants and third-party defendants so that York could preserve and pursue its contribution claims against all other defendants. York and plaintiffs conditioned their agreement on the entry by the circuit court of an order finding that the agreement was made in good faith and was fair and reasonable in accordance with the Contribution Act. 740 ILCS 100/0.01 *et seq.* (West 1992). Plaintiffs also agreed to give York sufficient time to continue its efforts to seek the participation of all other defendants in contributing to the $10 million settlement and to resolve York's contribution claims.

Following the oral settlement agreement with plaintiffs, counsel for York notified all defendants of the settlement and invited them to a meeting on May 11, 1995, to discuss the possibility of obtaining the participation of all defendants in the settlement. Prior to this meeting, York and codefendant Park Supply reached an agreement settling York's contribution claim against Park Supply for $300,000. All other codefendants, except for White Rodgers, K&K, Duenas, and R&D Mechanical, attended the May 11, 1995, meeting.

During the May 11, 1995, meeting, York's counsel and insurance representative discussed the circumstances surrounding, and the terms of, the settlement reached with plaintiffs and answered all questions related thereto. Thereafter, York again urged all parties to participate in the settlement and, upon the request of several codefendants, conducted separate meetings to discuss participation amounts. Following this meeting, York continued settlement discussion with several of the codefendants. On July 12, 1995, York reached an agreement with another codefendant, Marzullo, to settle its contribution claim for $300,000.

In September 1995, York and plaintiffs memorialized their prior oral agreement by executing a full release and settlement agreement. This settlement provides, *inter alia*, that York agrees to pay $10 million in consideration of plaintiffs' compromise and full settlement and extinguishment of all of their claims against all defendants

and third-party defendants, as well as other named potential tortfeasors; that York intends to retain, preserve, and fully pursue its rights of contribution against all defendants expressly identified in the settlement as well as any other released parties; and that the settlement is wholly conditioned upon the entry of a final order finding the settlement was made in good faith and was fair and reasonable pursuant to the Contribution Act.

On October 19, 1995, York filed with the circuit court its motion for a good-faith finding concerning its settlement with plaintiffs and requested the court to: dismiss all of plaintiffs' claims against all parties; enter a finding that the settlement was reached in good faith and was fair and reasonable in its amount; discharge York from any further liability from any other potential tortfeasors; and dismiss all of York's codefendants' claims against York. Certain of York's codefendants opposed this motion, arguing that a good-faith finding was unnecessary under the circumstances presented and that, in any event, their right to a trial by jury required that a jury, rather than the trial court, determine whether the settlement was entered in good faith and was reasonable in its amount. These codefendants also requested that the court substitute York's insurance carrier as the named plaintiff in the caption of this matter.

York and the codefendants fully briefed York's motion, and on December 21, 1995, the circuit court conducted a hearing on the motion. The court heard extensive argument on the motion and, at the conclusion of this hearing, granted York's motion in its entirety and denied the request to recaption this action. The court specifically ruled that it was appropriate for York to seek a good-faith finding with regard to the settlement and found that the $10 million settlement figure was reasonable. The court also determined that, under Illinois law, those opposed to York's motion did not have a right to a jury trial to determine the amount of the damages.

Notices of appeal were filed by Flexmaster, Wantuck, Grayson, Hart & Cooley[3], Peoples Gas, AGA, and K&K, and these appeals were subsequently consolidated. Since the filing of this appeal, Hart & Cooley and Flexmaster have reached settlements with York. Grayson, Peoples Gas, AGA, and K&K have adopted Wantuck's brief in whole or in part. Specifically, Grayson has specifically not adopted

---

[3]Hart & Cooley filed appeal No. 1—96—0308 prior to consolidation of the appeals. However, due to the settlement agreement between York and Hart & Cooley, Inc., Hart & Cooley made a motion to dismiss its appeal, which we granted. Appeals Nos. 1—96—0246, 1—96—0306, 1—96—0307, and 1—96—0309 remain pending and consolidated as appeal No. 1—96—0246.

Wantuck's constitutional argument that a jury, rather than the circuit court, should determine the reasonableness of the settlement amount.

We affirm.

ANALYSIS

I

The contribution defendants first contend that the trial court erred in determining that the Contribution Act's good-faith provision applied to York's settlement with plaintiffs. York argues that the good-faith provision does apply and, therefore, the court had authority to make a good-faith determination.

■ The crux of this issue involves the interpretation of section 2 of the Illinois Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/2 (West 1992), which provides in pertinent part:

> "(a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.
>
> (b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.
>
> (c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.
>
> (d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.
>
> (e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement."
>
> 740 ILCS 100/2(a), (b), (c), (d), (e) (West 1992).

In interpreting the above provision, this court has a duty to determine the intent of the legislature when enacting the statute

and to enforce that intent. *Henry v. St. John's Hospital*, 138 Ill. 2d 533, 541, 563 N.E.2d 410 (1990). Legislative history and case law reveal that the statute was enacted to serve two equally important policies: first, it allows for an equitable sharing of damages among tortfeasors according to their relative culpability, and second, it encourages settlements. *Bowers v. Murphy & Miller, Inc.*, 272 Ill. App. 3d 606, 608, 650 N.E.2d 608 (1995); *Lowe v. Norfolk & Western Ry. Co.*, 124 Ill. App. 3d 80, 463 N.E.2d 792 (1984).

When read together, the above statutory sections entitle an insurer to recover contribution from a joint tortfeasor where the insurer has settled with a claimant and has obtained a release, given in good faith, that extinguishes both the tort liability of its insured and the liability of another tortfeasor. *Bituminous Insurance Cos. v. Ruppenstein*, 150 Ill. App. 3d 402, 404, 501 N.E.2d 907 (1986); *Perez v. Espinoza*, 137 Ill. App. 3d 762, 765, 484 N.E.2d 1232 (1985). It is the good-faith nature of a settlement under section 2(c) of the Act that triggers the discharge of the settling tortfeasor's liability for contribution to any other tortfeasor under section 2(d). *Bowers*, 272 Ill. App. 3d at 608. However, the Act does not define good faith. Whether a settlement was made in good faith must be determined by the trial court after consideration of all of the surrounding circumstances. *Bowers*, 272 Ill. App. 3d at 608. Once a preliminary showing of good faith is made, the burden shifts to the party challenging the settlement to establish that it was not made in good faith. *Wilson v. The Hoffman Group, Inc.*, 131 Ill. 2d 308, 318-19, 546 N.E.2d 524 (1989). A trial court's determination of good faith will not be overturned absent an abuse of discretion. *Wilson*, 131 Ill. 2d at 319.

We note that the contribution defendants do not challenge the settlement between York and the plaintiffs on the basis that it was not made in good faith. The contribution defendants argue that a good-faith finding is inapplicable to the instant case because York, settling on behalf of all defendants, no longer has any contribution exposure to any other entities. Assuming *arguendo* that York no longer has contribution exposure to other entities, we consider the contribution defendants' contention that the good-faith finding is inapplicable to the instant case to be incorrect.

■ Although the contribution defendants argue that the good-faith provision has never been applied, and is not intended to be applied, where a party settles the entirety of the plaintiff's claims against all tortfeasors, they cite no authority for this argument. Furthermore, their argument is in derogation of case law. For example, in *Hall v. Archer-Daniels-Midland Co.*, 122 Ill. 2d 448, 524 N.E.2d 586 (1988), plaintiff Hall sustained injuries at a construction

site. His estate sued Archer-Daniels-Midland Company (ADM), and Mid-States General and Mechanical Contracting Corporation (Mid-States), the erector of a catwalk. ADM in turn sued Mid-States and Hall's employer, Corrigan Company, for contribution. Meanwhile, Hall settled all of his claims with ADM for $1.5 million and released all parties defendant. It appears that Corrigan did not consent to the settlement; however, neither Corrigan nor Mid-States objected to or challenged the good faith or reasonableness of the settlement. The matter proceeded to a jury trial on the proportionate faults of Mid-States, Corrigan, and ADM. After the jury determined the parties to be at fault 48%, 40% and 12%, respectively, the trial court applied these proportions to the amount of the settlement plus workers' compensation benefits. On appeal, the court considered several issues, including Corrigan's assertion that ADM failed to show that the amount of the settlement was reasonable and made in good faith and that ADM therefore did not establish that it paid more than its *pro rata* share of the common liability. The court held that the settlement reached by ADM and the plaintiff was in good faith and was reasonable, stating:

> "In settling with the plaintiff and extinguishing the potential tort liability of the others, ADM undertook the collective liability of the parties for the injuries at issue here, subject only to whatever success it might later have in its contribution actions against Mid-States and Corrigan. That circumstance would give rise to a presumption of good faith on the part of a contribution plaintiff who has settled the underlying tort action. Whether ADM paid an amount in excess of its pro rata share of the common liability was the point decided by the jury in the trial of ADM's contribution claims, assuming that the amount of the settlement was appropriate. And as we have already indicated, the amount of the settlement was reasonable, in light of Hall's injuries, and Corrigan and Mid-States did not attempt in the trial court to contradict the reasonableness or good faith of the settlement." *Hall*, 122 Ill. 2d at 461.

Therefore, in *Hall*, where a party settled on behalf of all other tortfeasors, the good-faith provision was applicable in determining whether the amount of the settlement was appropriate. An instructive case is *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 641 N.E.2d 402 (1994), where defendant settled on behalf of itself and the remaining defendant, and the court held that the remaining defendant should have challenged the good-faith nature of the settlement if it did not believe that the settlement accurately reflected the parties' common liability to the plaintiff. *Ziarko*, 161 Ill. 2d at 288.

In the instant case, the good-faith provision was also applicable

to determine whether the settlement amount or common liability was appropriate. Although the settlement in *Hall* was postjudgment, "[n]owhere in the Contribution Act does the legislature distinguish between pretrial or post-judgment settlements." *Jessee v. Amoco Oil Co.*, 230 Ill. App. 3d 337, 347, 594 N.E.2d 1210 (1992). Under section 2(b) of the Act, both types of settlement agreements are treated identically, and both entitle the settling defendant to seek contribution from another tortfeasor whose liability to the injured plaintiff is also extinguished in the settlement agreement. *Ziarko*, 161 Ill. 2d at 287.

The contribution defendants assert that the purpose of the good-faith finding is to protect the settling defendant against contribution claims. Therefore, they argue that the good-faith provision does not apply since York has no contribution claims against it. However, this protection is afforded only when the trial court determines that the settlement amount was reasonable at a hearing on good faith. We believe that a finding by the trial court that York's settlement with plaintiffs was made in good faith was necessary in order for York to pursue its contribution claims against other tortfeasors.

We disagree with the contribution defendants' argument that a good-faith finding by the trial court in the instant case was neither necessary nor proper for York to terminate the plaintiffs' claims against it and to preserve its right to pursue contribution claims. The policy of the Contribution Act is to encourage compromise and settlement in the absence of bad faith, fraud or collusion. *Mallaney v. Dunaway*, 178 Ill. App. 3d 827, 533 N.E.2d 1114 (1988). "[N]othing is better calculated to frustrate and discourage settlements than the knowledge that the settlement lacks finality and will lead to further litigation and, perhaps, to further liability." *Perez v. Espinoza*, 137 Ill. App. 3d 762, 765, 484 N.E.2d 1232 (1985). We believe that the contribution defendants' request that we dispense with a good-faith finding in circumstances such as are present in the instant case would contravene the policy and purposes of the Contribution Act. Based upon our consideration of the facts in the instant case and the applicable law, we hold that sections 2(b), (c), (d) and (e) of the Contribution Act authorized the trial court in the instant case to make a good-faith finding.

## II

The contribution defendants next contend that they were deprived of their constitutional right to due process of law, pursuant to article I, section 13, of the Illinois Constitution of 1970 by the trial court's ruling that the settlement was made in good faith. York

argues that the contribution defendants do not have a constitutional right to a jury determination of whether the settlement was made in good faith and was reasonable in its amount.

■ In Illinois, the right to a jury trial does not attach to every action at law. Instead, such right only attaches in those actions where such right existed under the English common law at the time the constitution was adopted. The United States Constitution provides that any action at law, or one not of equity or admiralty jurisdiction, confers the right to a jury trial. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 75, 643 N.E.2d 734 (1994). However, the Contribution Act is a new statutory right created by the legislature and, as such, does not confer the right to a jury trial. See *Martin*, 163 Ill. 2d at 75 (where the court held that the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)) is a statutory right and, therefore, does not confer a right to a jury trial). Furthermore, the doctrine of contribution among joint tortfeasors is equitable in origin (*Henry*, 138 Ill. 2d at 548), and, therefore, would not confer a right to a jury trial under the United States Constitution.

■ In a contribution action, the settlement amount or "common liability" is deemed to be the amount against which the jury's determination of liability will be factored. In a contribution trial, therefore, the jury will only decide whether the contribution defendant is liable and, if so, by what percentage of the common liability. The contribution defendants assert that they are entitled to have a jury determine not only the liability issue, but the amount of damages representing the common liability, as well. They rely on Justice Heiple's dissent in *Mallaney v. Dunaway*, 178 Ill. App. 3d 827, 533 N.E.2d 1114 (1988), to support their assertion.

In *Mallaney*, Justice Heiple, then an appellate court justice, dissented from the majority's holding that, absent good faith, the amount paid to the injured party for the release of all claims against the joint tortfeasors constituted the common liability. Justice Heiple stated in his dissent that "[t]he issue here is not whether the settlement was in *good faith* or not. That is wholly beside the point. The issue is whether the settlement figure was *correct*." (Emphasis in original.) *Mallaney*, 178 Ill. App. 3d at 834 (Heiple, J., dissenting). The dissent also states that use of the common liability to determine the amount that a joint tortfeasor must pay deprives that tortfeasor of his day in court. Unless the contribution defendant is allowed to litigate the amount of the damages, "he will be denied his constitutional right to both procedural and substantive due process of law." *Mallaney*, 178 Ill. App. 3d at 834 (Heiple, J., dissenting).

Justice Heiple's argument, however, is inconsistent with our supreme court's ruling in *Ziarko*. In *Ziarko*, the plaintiff sued two entities for injuries he sustained in an accident, and the defendants then filed claims for contribution against one another. After a jury returned a verdict of $7.1 million, the defendant that had been assigned a greater percentage of fault settled with the plaintiff for $6.65 million in exchange for the plaintiff's release of all of his claims against both defendants. Among the issues considered by the supreme court was whether the "common liability" of the defendants was the figure representing the jury verdict or the lesser figure subsequently agreed to as part of the settlement. Relying on *Mallaney*, the court held that the common liability was the amount by which the defendants' damages would be assessed, even if the nonsettling defendant might have been able to prove that actual damages exceeded or were less than the amount provided for in the settlement agreement. *Ziarko*, 161 Ill. 2d at 285. We note that Justice Heiple did not dissent regarding this issue in *Ziarko*.

Therefore, our supreme court has made it clear that the "common liability" amount is controlling, even when a jury has determined the amount of damages in a trial. Thus, notwithstanding the fact that the contribution defendants do not have a constitutional right to a jury trial on this issue, a jury's determination of damages would not supersede the "common liability" amount.

The contribution defendants seek to distinguish *Mallaney* and *Ziarko* by arguing that no challenge was made in either *Mallaney* or *Ziarko* to the authority of the trial court to make a good-faith finding. However, we consider such a distinction to be inconsequential. The rule of law we adhere to has general applicability. As such, the rule applies whether or not there was a challenge to the authority of the trial court regarding making a good-faith finding. Furthermore, in our view, if the contribution defendants believed that the settlement agreement did not accurately reflect the parties' common liability to plaintiffs, they should have challenged the good-faith nature of the settlement agreement. See *Ziarko*, 161 Ill. 2d 267, 641 N.E.2d 402.

■ The contribution defendants also argue that they were denied due process because there is no substantive evidence to determine whether the $10 million payment agreed to by plaintiffs and York was an appropriate figure. The question of what is required before a finding of good-faith settlement may be made is left to the discretion of the trial court. *Ruffino v. Hinze*, 181 Ill. App. 3d 827, 832, 537 N.E.2d 871 (1989). The Act does not require a separate evidentiary hearing, and Illinois courts have consistently held that a separate ev-

identiary hearing is not required before a court may find that a settlement was made in good faith. *Lorenz v. Air Illinois, Inc.*, 168 Ill. App. 3d 1060, 522 N.E.2d 932 (1988); *Barreto v. City of Waukegan*, 133 Ill. App. 3d 119, 478 N.E.2d 581 (1985).

In the instant case, the trial court reached its decision after considering, *inter alia*, the pleadings, motions, briefs, and affidavits of the parties and after hearing extensive arguments. We believe this was an appropriate method for determining the good faith and reasonableness of the settlement. See *Ruffino*, 181 Ill. App. 3d at 832; *Lorenz*, 168 Ill. App. 3d at 1064.

### III

■ The contribution defendants next contend that the trial court erred in refusing to require that York's insurance carrier be named as a contribution plaintiff, as a real party in interest. York argues that the court correctly decided not to substitute York's insurance carrier as the named plaintiff because York has retained a pecuniary interest in its outcome. Section 2(f) of the Contribution Act provides in relevant part:

"Anyone who, by payment, has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full his obligation to the tortfeasor, is subrogated to the tortfeasor's right of contribution." 740 ILCS 100/2(f) (West 1992).

Thus, York's insurer, American International Group (AIG), became subrogated to York's right of contribution once it paid funds on York's behalf to the plaintiffs in exchange for their general releases in the underlying action.

The contribution defendants cite section 2—403(c) of the Illinois Code of Civil Procedure, which provides:

"Any action hereafter brought by virtue of the subrogation provision of any contract or by virtue of subrogation by operation of law shall be brought either in the name or for the use of the subrogee; and the subrogee shall in his or her pleading on oath, or by his or her affidavit if pleading is not required, allege that he or she is the actual bona fide subrogee and set forth how and when he or she became subrogee." 735 ILCS 5/2—403(c) (West 1992).

Thus, the interest of the subrogee cannot be concealed in any proceeding brought for its benefit, but it either must be named as the plaintiff or disclosed as the real party in interest. *Shaw v. Close*, 92 Ill. App. 2d 1, 235 N.E.2d 830 (1968). However, if an insured plaintiff has even a *de minimis* pecuniary interest in the lawsuit, that interest is sufficient to allow a subrogation action to be maintained in plaintiff's name. *Scheibel v. Groeteka*, 183 Ill. App. 3d 120, 538 N.E.2d 1236 (1989).

The contribution defendants argue that AIG must be named as a party in interest because a vastly substantial portion of the payment York will make to the plaintiffs (approximately $9 million) will come from AIG or one of its subsidiaries. They rely on *Prudential Insurance Co. v. Romanelli*, 243 Ill. App. 3d 246, 612 N.E.2d 24 (1993), to support their argument. In *Romanelli*, the court held that the insurance company was the actual party in interest because, based upon the record, the plaintiff *no longer had any interest* in the subrogated claim. *Romanelli*, 243 Ill. App. 3d at 250.

The case *sub judice* is readily distinguishable from *Romanelli*. Here, York has maintained a pecuniary interest in that it is obligated to pay the first $1 million of the settlement pursuant to the terms of its insurance policy. Therefore, the trial court was correct to deny the contribution defendants' motion to require AIG to be named as plaintiff.

## IV

■ Lastly, York filed a motion to strike the notice of appeal and docketing statement and to dismiss the appeal of K&K because K&K's notice of appeal was not timely filed for purposes of Supreme Court Rule 303 (155 Ill. 2d R. 303). The motion was taken with the case. In the instant case, the trial court entered its order granting York's motion for a good-faith finding on December 21, 1995. Pursuant to Supreme Court Rule 304(a), the order was made final and provided that there was no just reason to delay enforcement or appeal. Flexmaster was the first to file its notice of appeal on January 12, 1996. K&K states that it did not receive a notice of Flexmaster's appeal but did receive Peoples Gas' notice of appeal, which was filed on January 19, 1996. K&K then filed its notice of appeal on January 29, 1996, to join in Peoples Gas' appeal.

Supreme Court Rule 303(a) provides:

"If a timely notice of appeal is filed and served by a party, any other party, within 10 days after service upon him or her, or within 30 days from the entry of the judgment or order being appealed, or within 30 days of the entry of the order disposing of the last pending post-judgment motion, whichever is later, may join in the appeal, appeal separately, or cross-appeal by filing a notice of appeal, indicating which type of appeal is being taken." 155 Ill. 2d R. 303(a)(3).

K&K relies on the provision of the statute that states: "If *a* [proper] timely notice of appeal is filed and served by a party, any other party, within 10 days after service upon him or her *** may join in the appeal." (Emphasis added.) 155 Ill. 2d R. 303(a)(3). K&K argues, therefore, that its filing of the notice of appeal 10 days after

it received Peoples Gas' notice of appeal was timely. We agree. An instructive case is *Kenney v. Churchill Truck Lines, Inc.*, 6 Ill. App. 3d 983, 286 N.E.2d 619 (1972). In *Kenney*, the court interpreted Rule 303(a)(3) and stated:

> "We believe that the plain meaning of Rule 303(a) is to provide a liberal and reasonable method for appeal in a multiple party litigation so that if a proper timely notice of appeal is filed to commence the review, then any other party involved in the suit may then participate in the appeal—by either joining or merging, separately appealing, or cross appealing. *** [T]he modern trend [is] to simplify the mechanics of review, placing less emphasis upon form and more upon merits." *Kenney*, 6 Ill. App. 3d at 988-89.

York cites *Domenella v. Domenella*, 159 Ill. App. 3d 862, 868, 513 N.E.2d 17 (1987). In *Domenella*, the court held that Supreme Court Rule 303(a) requires that a notice of an additional appeal be filed 10 days after the filing of the first notice of appeal or within 30 days of the entry of judgment, whichever is later. However, the language in *Domenella* is *dicta*. The statute does not read "first notice." The statute reads "a proper timely notice." Peoples Gas' notice of appeal was timely filed. Therefore, K&K's appeal 10 days thereafter was also timely. K&K's contention accords with interpreting Rule 303(a)(3) according to its plain meaning. See *Kenney*, 6 Ill. App. 3d at 988-89.

For the reasons stated herein, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

LEAVITT and CAHILL, JJ., concur.