THOMAS RICHARDSON, Plaintiff-Appellee, v. DONALD L. VAUGHN *et al.*, d/b/a The Aurora Athletic Club, Defendants-Appellants (Lewis J. Dekker *et al.*, Defendants).

Second District   No. 2—92—1302

Opinion filed October 7, 1993.—Rehearing denied November 16, 1993.

Dalton P. Grief and Maxine R. Grief, both of Grief, Bus & Konewko, Ltd., of West Chicago, for appellants.

Gary K. Mickey, Bernard K. Weiler, and Steven A. Andersson, all of Mickey, Wilson, Weiler & Renzi, P.C., of Aurora, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Thomas Richardson, filed a complaint in the circuit court of Kane County against defendants, Donald L. Vaughn and Dennis E. Parker, d/b/a The Aurora Athletic Club, Lewis Dekker, Roy Titzel, and Con-Way Central Express, a foreign corporation, alleging negligence. Prior to trial, all defendants, except Vaughn and Parker, settled and were dismissed with prejudice. These remaining defendants timely appeal from a judgment entered on a jury verdict in favor of plaintiff and from the denial of their post-trial motion.

Defendants raise the following issues: (1) whether there was sufficient evidence to support the trial court's determination that defendants owed a duty to safeguard plaintiff from an open and obvious danger; (2) whether the verdict in favor of plaintiff was against the manifest weight of the evidence; and (3) whether the trial court erred in denying defendants' motion for a directed verdict at the close of plaintiff's case in chief.

The following relevant facts were adduced at trial. Defendants own and operate the Aurora Athletic Club in Aurora, Illinois. As part of its business, the club would rent its facility to various groups for

social events, including picnics. Included in the facility rental was the use of club-supplied athletic equipment, including volleyballs and nets, horseshoes, softballs and bats.

North of the club property line was a vacant field onto which club patrons would occasionally venture. Luke Norwood, a club employee who was hired to maintain the picnic area, admitted that it was not an unusual occurrence for picnickers to play baseball and conduct games on the north field. Norwood further testified that he would occasionally mow the grass north of the club property line. In order to prevent people from driving their vehicles into the north field, Norwood installed a rusty, brown-colored cable between two trees. The cable spanned a distance of either 30 or 140 feet (the record is not clear) and hung approximately 2 to 3 feet at the ends and sagged to a height of 2 to 2½ feet in the middle. Norwood admitted that after he installed the cable, and immediately prior to the date of the accident, he did not suspend any flags or signs to alert persons to the cable's presence. Norwood stated, however, that the cable was clearly visible and, to his knowledge, no one in the past had tripped over it.

On the date of the accident, plaintiff's employer, Con-Way Central Express, held a company picnic at the Aurora Athletic Club. Plaintiff cooked food at the picnic. Following his cooking duties, plaintiff was seated near a picnic table where he observed some children, and then adults, playing with water balloons. Plaintiff testified that after about 15 to 20 minutes he became aware that he was about the only dry person in the area. He then noticed two fellow employees, Titzel and Dekker, standing 15 to 20 yards from his position; both were holding water balloons. They made eye contact with each other, and then they made eye contact with him; it appeared to plaintiff that he was going to be the next one to be doused.

When Titzel began running towards him, plaintiff jumped from his chair and began running as fast as he could in a northerly direction towards the open field. While running, plaintiff looked over his right shoulder to see how close Titzel was getting and observed that he was gaining ground. When plaintiff looked back in the direction he was running he observed a cable two to three feet off the ground. Sensing that he was unable to stop, plaintiff hurdled the cable and cleared it entirely. Prior to that time, plaintiff had not observed the cable, and he observed it for the first time when he was approximately five yards from it. On cross-examination, plaintiff stated that after he got up from his chair he took one or two steps, looked over his shoulder and continued to run while looking over his shoulder until he was about five yards from the cable. From the time he looked over his

shoulder, after one or two steps, he was not looking in the direction he was running until he was about five yards from the cable, at which time he made the decision to jump. Upon landing, plaintiff's foot came down on an uneven spot, whereupon he heard a loud snap and then fell to the ground. As a consequence of his fall, plaintiff suffered injuries to his left knee requiring extensive medical and surgical treatment.

At the close of plaintiff's evidence, defendants' motion for a directed verdict was denied by the trial court. The defense rested and closing arguments were heard. The jury returned a verdict in favor of plaintiff in the amount of $355,000 reduced by 15% for plaintiff's contributory negligence, thus resulting in a total award of $301,750. Defendants appeal from the judgment entered on the jury verdict and the denial of their post-trial motion.

Defendants' first contention is that plaintiff failed to present evidence sufficient to establish the existence of a duty. In order to state a cause of action for negligence, plaintiff must establish that defendants owed him a duty, a breach of that duty, and an injury proximately caused by the breach. (See *Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 207.) Whether a duty exists is a question of law to be determined by the court. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140.) The factors relevant to the question of whether to impose a duty are (1) foreseeability that the defendants' conduct will result in injury to another; (2) likelihood of injury; (3) the magnitude of guarding against it; and (4) the consequences of placing that burden upon the defendant. *Curatola*, 154 Ill. 2d at 214; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518.

Defendants contend that they owed no duty to plaintiff because their liability was contingent upon plaintiff's presenting evidence demonstrating that the condition on defendants' property was latent, concealed, or one which plaintiff could not have been expected to discover. Defendants argue that various witnesses testified that they had seen the cable earlier in the day, and had plaintiff himself not seen the cable he would not have jumped over it as he attempted to evade his pursuer. The thrust of defendants' argument is that because the cable was an open and obvious danger, they owed no duty to plaintiff to warn of, or otherwise safeguard against, any hazard presented by the outstretched cable.

■ In *Ward v. K mart Corp.* (136 Ill. 2d 132), a customer exiting a retail store sustained injuries when he walked into a concrete post located in close proximity to a customer exit. At the time of the injury, the customer was carrying a large mirror recently purchased

from the defendant's store which, according to plaintiff's testimony, obstructed his view. In holding that the defendant's duty of reasonable care encompassed the risk that one of its customers, while carrying a large bulky item, might collide with the post, the court rejected the application of a *per se* rule that the owner or occupier of land owed no duty of reasonable care, under any circumstances, to lawful entrants on its premises where the danger was known or obvious to the entrants. (136 Ill. 2d at 145, 147.) Recognizing the harsh nature of the rule as it then existed, the court modified the open and obvious rule to encompass additional considerations relevant to determining whether to impose a duty upon owners or occupiers of land. The court adopted section 343A of the Restatement (Second) of Torts, which provides:

" '(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*' " (Emphasis in original.) (*Ward*, 136 Ill. 2d at 149, quoting Restatement (Second) of Torts §343A (1965).)

The court explained that the imposition of a duty on landowners to exercise reasonable care in safeguarding against harm was not determined solely by whether the condition was open and obvious (*Ward*, 136 Ill. 2d at 150); rather, the inquiry requires a further examination into whether an invitee may reasonably be expected to be distracted or forgetful of the condition after having momentarily encountered it (*Ward*, 136 Ill. 2d at 152, 156).

The supreme court on two subsequent occasions has expressed its continued approval of the rule established in *Ward*. In *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, a worker was injured after he stumbled in a rut while exiting a portable bathroom on a construction site. At the time of the injury, the worker was looking upward to ascertain whether construction materials were being thrown off a balcony near the bathroom. After concluding that the existence of the rut was obvious, the court nevertheless determined that the defendants owed the worker a duty because his injury was reasonably foreseeable. The evidence supported the plaintiff's contention that he was distracted at the time of his injury, and it was reasonable for the defendants, as the general contractors on the project, to anticipate that a worker exiting the bathroom would be momentarily distracted while looking out for falling debris and consequently stumble in a rut. 141 Ill. 2d at 438-39.

In *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, plaintiff's decedent was electrocuted when he came in contact with high voltage wires while painting a billboard leased to the defendant. The court held that the defendant owed decedent a duty because it was reasonable to expect that a worker might become distracted and consequently not be aware or remember the presence of the electric wires. 149 Ill. 2d at 29.

■ Initially, we note that defendants' argument fails to recognize the court's explanation in *Ward* that the loose characterization of a particular hazard as open and obvious is not conclusive in determining whether to impose a duty upon landowners. (See *Ward*, 136 Ill. 2d at 150.) The mere fact that plaintiff failed to present evidence demonstrating a latent or undiscoverable condition, or that various witnesses testified that they had seen the cable earlier in the day, did not determinatively resolve the question of whether to impose a duty on defendants. Although plaintiff suggests at one point in his brief that the harm posed by the cable might not have been open and obvious, the primary thrust of his argument on appeal necessarily concedes that the cable presented an obvious hazard. Moreover, the evidence presented at trial supports the conclusion that the cable was an obvious condition.

Assuming that the outstretched cable presented an obvious condition, we must further consider whether defendants had reason to anticipate the harm to plaintiff despite the obviousness of the condition. (See *American National Bank*, 149 Ill. 2d at 29; Restatement (Second) of Torts §343A (1965).) The relevant inquiry asks whether a defendant should reasonably anticipate injury to those entrants on the premises who are generally exercising reasonable care for their own safety, but may reasonably be expected to be distracted or forgetful of the condition after having momentarily encountered it. (*Ward*, 136 Ill. 2d at 152.) A defendant, however, "need not anticipate the negligence of others." *Ward*, 136 Ill. 2d at 152.

Under the factual circumstances of the present case, we are unable to conclude that plaintiff was "generally exercising reasonable care for his own safety." Although defendants could reasonably anticipate that patrons of their facility might engage 'in vigorous physical activities of the type ordinarily associated with an outdoor picnic, it would be unreasonable to require defendants to anticipate that plaintiff, while engaged in such activities, would blind himself to the probable consequences of his own actions. The *Ward* doctrine does not charge possessors of land with a duty to anticipate the harm that might result from an invitee's inattention to a known or

obvious condition. Instead, defendants' duty arises where they could reasonably anticipate an invitee's distraction or momentary forgetfulness. Although drawing the line between mere inattention and reasonably foreseeable distraction is not susceptible to mathematical precision and requires a careful focus upon the particular facts at hand, the failure to make this distinction would impermissibly expand a defendant's scope of potential liability to unforeseeable dimensions. Moreover, imposing a duty on possessors of land that is premised on a plaintiff's inattentiveness would place a burden on possessors of land tantamount to requiring them to insure the safety of their invitees. Defendants should not be confronted with the impossible burden of rendering their premises injury-proof, and they are entitled to the expectation that their patrons will exercise reasonable care for their own safety. *Ward*, 136 Ill. 2d at 156.

In the present case, the record does not support the conclusion that plaintiff was distracted or that he was momentarily forgetful of the condition after having encountered it. (See *Ward*, 136 Ill. 2d at 152, 156.) Plaintiff testified that he did not see or was not otherwise aware of the cable's presence until the instant immediately prior to his jumping; therefore, no duty could arise from defendants' having to anticipate momentary forgetfulness because it would offend logic to contend that one could be forgetful of a condition of which he had no prior knowledge.

Additionally, the facts of the present case do not suggest the same temporal and proximate quality as existed in *Ward* and the other cases cited by plaintiff. In each of those cases, the distraction amounted to no more than a momentary diversion of attention while the plaintiff was otherwise exercising reasonable care for his own safety. For example, in *Ward*, the plaintiff was momentarily distracted as he exited the customer service door just prior to striking a post outside the door. The court noted that it "may well have arrived at a different conclusion [*i.e.* that the store owner owed no duty to plaintiff] if the post would have been located further [*sic*] from the entrance of the building, or if the plaintiff would not have been carrying any vision-obscuring bundle." (*Ward*, 136 Ill. 2d at 153.) In *Deibert*, the construction worker was momentarily distracted as he exited the portable bathroom just prior to encountering the rut. The court did not consider whether the defendant's duty would have existed if the plaintiff had continued walking for an additional 20 or 30 yards with his eyes fixated on the balcony above and then encountered a rut. In *American National*, the billboard painter was distracted as he negotiated a catwalk prior to

contacting the electric power lines. Unlike these cases, plaintiff here admitted on cross-examination that after he left his chair he continued to run at full speed in the direction of the cable with his head turned behind him until just prior to the instant that he first observed the cable and decided to leap over it. The record here does not support the conclusion that plaintiff's attention was momentarily diverted while he was otherwise engaged in the exercise of reasonable care for his own safety.

Accordingly, we determine, under these specific circumstances, that defendants owed plaintiff no duty to warn or otherwise safeguard plaintiff from potential harm posed by an obvious condition where plaintiff's injuries resulted not from a distraction which could be reasonably anticipated by defendants, but instead were the result of plaintiff's own inattentiveness in running a considerable distance without looking forward for the presence of potential obstacles. By running at full speed without looking forward, plaintiff might have eventually encountered any stationary object. A plaintiff who, through his own inattention, has subjected himself to potential injury may not be heard to assert that a defendant should have anticipated that he might be "distracted."

We conclude as a matter of law that the facts of this case, when viewed in a light most favorable to plaintiff, fail to support the imposition of a duty on defendants. As a result of our determination, it is unnecessary to reach defendants' remaining issues on appeal. Accordingly, for the foregoing reasons, the judgment entered in the circuit court of Kane County in favor of plaintiff is reversed.

Reversed.

INGLIS, P.J., and GEIGER, J., concur.