KIMBERLY D. CROKER, Plaintiff v. YADKIN, INC., Defendant

No. COA97-24

(Filed 7 July 1998)

**Premises Liability— pier as parasailing hazard—sufficiency of evidence**

The trial court did not err by granting summary judgment for defendant in an action arising from injuries suffered by paintiff while parasailing when she crashed into a pier on the lake managed by defendant. Defendant's license from the Federal Energy Regulatory Commission does not create a duty of care upon which plaintiff might rely in a negligence action and defendant had no common law duty to warn plaintiff of the pier as it was a hazard obvious to any ordinarily intelligent person using her eyes in an ordinary way.

CROKER v. YADKIN, INC.

[130 N.C. App. 64 (1998)]

Appeal by plaintiff from order filed 11 October 1996 by Judge Howard R. Greeson, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 10 September 1997.

*Donaldson & Black, P.A., by Jeffrey K. Peraldo, for plaintiff-appellant.*

*LeBoeuf, Lamb, Greene & MacRae, L.L.P., by Lynn A. Ellenberger and Smith, Helms, Mulliss & Moore, L.L.P., by Alexander L. Maultsby, for defendant-appellee.*

JOHN, Judge.

In this negligence action, plaintiff Kimberly D. Croker appeals the trial court's grant of summary judgment in favor of defendant Yadkin, Inc. We affirm the ruling of the trial court.

Pertinent factual and procedural information includes the following: Defendant is the successor corporation to Carolina Aluminum Company. In 1958, the latter received a fifty-year license (the license) from the Federal Energy Regulatory Commission (FERC) to operate a hydroelectric dam as part of the Narrows Development on the Yadkin River. The dam created an impoundment commonly known as Badin Lake (the Lake).

While plaintiff was at the Lake on 2 July 1992, Eddie Trogdon (Trogdon) offered to take her parasailing, an activity which involves being pulled behind a boat in a modified parachute. Accepting Trogdon's invitation, plaintiff and some friends traveled by boat to the Dixie Shores access area, a private location designated for the use of members and guests of the Dixie Shores Homeowners Association.

Trogdon demonstrated parasailing to the group. He explained that the modified parachute is laid out on the ground, with the participant strapped into a harness. The parachute is connected to a boat by a line which becomes taut as the boat accelerates. At the same time, the parasailer runs behind the boat on land, the parasail fills with air, and the parasailer is lifted into the air.

Trogdon strapped plaintiff into the harness, instructed her on how to release from the parasail, and warned her not to touch the risers. Plaintiff remembers nothing following her run prior to take-off. According to Trogdon, plaintiff stumbled when preparing to take-off. When plaintiff was tree-level, the parasail turned right towards a pier. Trogdon and his wife Pat, who was operating the boat, attributed

CROKER v. YADKIN, INC.

[130 N.C. App. 64 (1998)]

plaintiff's change in direction to her having pulled on the risers on the right side of the parasail.

As the parasail listed to the right, plaintiff hit the top deck of a two-story pier. She impacted the side railing of the pier with her leg, slid across the top of the pier, hit the pier's front railing and fell into the water. Plaintiff consequently suffered serious injuries, including multiple bone fractures and serious facial injuries, and was transported by helicopter to Chapel Hill for medical treatment.

The pier was part of a waterfront residence in the Dixie Shores subdivision owned by Edward L. Clayton, Jr. (Clayton). Pursuant to authority granted by the license, defendant had sanctioned and licensed the renovation and expansion by Clayton of a previously existing pier and continued to license the pier on a yearly basis.

Plaintiff instituted the instant action on 30 June 1995, alleging defendant "was negligent and ha[d] breached the duties imposed upon it by its FERC . . . license." According to plaintiff's complaint, defendant "knew, or through the exercise of reasonable care should have known" the area "was frequently and routinely used by parasailers for take off," and was negligent in four main ways: (1) by approving the design of and allowing a two-story dock to be erected and remain erected adjacent to such area, (2) by failing to warn recreational users and parasailers of the hazardous nature of the area, (3) by failing to prohibit parasailing in the area adjacent to the pier and (4) by failing "to adequately inspect its lands and licensed waters for the purposes of discovering and correcting hazards to the recreational users of its impoundment."

Defendant's motion to dismiss under N.C.R. Civ. P. 12(b)(6) was denied in an order entered 1 November 1995. However, defendant's summary judgment motion was granted 11 October 1996, whereupon plaintiff filed timely notice of appeal. Defendant cross appealed, assigning error to the denial of its motion to dismiss.

Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. N.C.R. Civ. P. 56; *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). Plaintiff correctly interjects that negligence actions are rarely susceptible to summary judgment. *See Lamb v. Wedgewood South Corp.*, 308 N.C. 419,

CROKER v. YADKIN, INC.

[130 N.C. App. 64 (1998)]

425, 302 S.E.2d 868, 871 (1983). However, if it is shown the defendant had no duty of care to the plaintiff, summary judgment is appropriate. *See Newsom v. Byrnes*, 114 N.C. App. 787, 790, 443 S.E.2d 365, 368 (1994) (summary judgment appropriate where defendant "was not bound to warn plaintiff of an obvious danger").

Before this Court, plaintiff focuses almost exclusively upon Chapter 390 of the 1955 Session Laws entitled "An Act to Regulate the Operation of Motorboats and Other Craft on the Waters of the Yadkin and Pee Dee Rivers in Montgomery and Stanley Counties" (Chapter 390). The section provides

> no claim, right or demand of any kind whatsoever shall be asserted against the owner or owners of said hydroelectric power development or of said lakes by reason of said use or enjoyment, irrespective of the length of time.

Plaintiff argues the foregoing section is violative of the North Carolina Constitution in that it: (1) attempts to confer exclusive and separate emoluments and privileges, (2) is a prohibited special and local act and (3) is unconstitutionally vague and ambiguous. Plaintiff further maintains defendant waived its rights under Chapter 390 when it accepted the license and amendments thereto. However, because "it does not affirmatively appear in the record that the constitutional issue was both raised and passed upon in the trial court," *Nelson v. Battle Forest Friends Meeting*, 108 N.C. App. 641, 646, 425 S.E.2d 4, 7, *rev'd on other grounds*, 335 N.C. 133, 436 S.E.2d 122 (1993), we will not consider for the first time on appeal plaintiff's contention that Chapter 390 is unconstitutional.

Examination of the instant record reveals mention of Chapter 390 initially as an affirmative defense in defendant's "Amended Answer and Affirmative Defenses," and thereafter as a basis for defendant's motion to dismiss. However, no documents of record purport to assert plaintiff's contention Chapter 390 is unconstitutional, nor does plaintiff raise the question as an assignment of error.

We do note that "Plaintiff's Exhibit A," attached to plaintiff's "Motion to Amend Record on Appeal" allowed by this Court 14 March 1997, references Article I, section 32 and Article XIV, Section 3 of the North Carolina Constitution. The exhibit was described in that motion as "page 13 from Defendant's Memorandum In Support of Motion To Dismiss," and plaintiff sought inclusion of the exhibit as being "necessary to the Court's understanding of [plaintiff's] argu-

ment . . . that the credibility of [defendant] is suspect." We do not believe this solitary sheet belatedly supplementing the record for an unrelated purpose "affirmatively" demonstrates "that the constitutional issue was both raised and passed upon in the trial court." *See id.* (even though issued raised in trial court, record did not indicate court considered the issue in granting summary judgment). *Cf. Tetterton v. Long Manufacturing Co.*, 314 N.C. 44, 47-48, 332 S.E.2d 67, 69 (1985) (parties' assignments of error raising constitutional issue and affidavit of trial judge acknowledging constitutionality of statute "timely raised, presented, and argued" in the trial court sufficient to indicate issue properly before that court).

Nonetheless, as we hold the evidence before the trial court failed to show the presence of a genuine issue of material fact as to an essential element of actionable negligence under our common law, it is unnecessary in any event to address either the constitutionality or the application to the circumstances *sub judice* of Chapter 390. *See Midrex Corp. v. Lynch, Sec. of Revenue*, 50 N.C. App. 611, 618, 274 S.E.2d 853, 858 (by virtue of court's resolution of case, it "would not reach any constitutional question if properly presented"), *appeal dismissed* and *disc. review denied*, 303 N.C. 181, 280 S.E.2d 453 (1981).

Actionable negligence is established by showing: (1) a failure to exercise due care in the performance of a legal duty owed to the plaintiff under the circumstances and (2) a negligent breach of such duty proximately causing the plaintiff's injury. *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). Plaintiff herein asserts the presence before the trial court of a genuine issue of material fact as to the first element based upon defendant's alleged breach of duties imposed upon it by the license.

The license grants defendant federal permission to operate the dam on the Yadkin River, and obligates defendant to allow the public free access for recreational purposes to project waters and adjacent lands. By terms of the license, defendant

may reserve from public access such portions of the project waters, adjacent lands, and project facilities as may be necessary for the protection of life, health, and property.

Relying on the license, amendments thereto, correspondence between defendant and the FERC Office, and publications of defendant, plaintiff insists defendant "was . . . under an affirmative duty to safely operate recreational facilities," and that it "owed this duty to

CROKER v. YADKIN, INC.

[130 N.C. App. 64 (1998)]

Plaintiff, a recreational user of Defendant's lake." Defendant, plaintiff explains, "could have either regulated or, if appropriate, banned parasailing on its lake" pursuant to the license, or it "could have required alteration of [sic], if necessary, removal of the pier," pursuant to the license issued to Clayton.

It is well settled that an action in tort ordinarily

> must be grounded on a violation of a duty imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties, rather than one based on an agreement between the parties.

*Asheville Contracting Co. v. City of Wilson*, 62 N.C. App. 329, 342, 303 S.E.2d 365, 373 (1983). An injured party who elects to sue in tort "must accept the standard of care prescribed by the common law as the test of determining actionable negligence." *Pinnix v. Toomey*, 242 N.C. 358, 363, 87 S.E.2d 893, 898 (1955). Thus, any contract provision prescribing a different standard of care from that imposed by the common law is not relevant to actionable negligence. *Id.*

Applying the foregoing authorities to the case *sub judice*, it is evident the license does not create a duty of care upon which plaintiff might rely in a negligence action. The latter must be based upon an alleged breach of a duty of care prescribed by the common law.

Notwithstanding, plaintiff cites *Georgia Power Co. v. Baker*, 830 F.2d 163 (11th Cir. 1987) in support of her position that the license indeed established a duty of care by defendant to plaintiff. However, *Georgia Power* is distinguishable in that it did not address the duty of care involved in a negligence case. Plaintiff correctly notes that *Georgia Power* upheld the provision of a FERC license granting authority to reserve from public access those portions of the project necessary for the protection of life, health and property in the specific context of recreational safety. However, the case was not a negligence case and was silent on the issue of duty of care. Rather, it stands for the proposition that a FERC license does not interfere with riparian water rights law in the state of Georgia, *id.* at 167, an issue not relevant to the case *sub judice*.

Finally, regarding plaintiff's assertion defendant "could have . . . banned parasailing" on the Lake, we note that in this jurisdiction N.C.G.S. § 75A-15 (1994) empowers the Wildlife Resources Commission (the Commission) to make rules for local waterways concerning (1) the type of activities that may be con-

ducted on the water and (2) the promotion of water safety generally. G.S. § 75A-15(a)(1)(2). Nothing in the record reveals the Commission had issued any regulation regarding parasailing at the time of plaintiff's injury.

Turning then to the common law, it is well established that the nature and extent of the duty owed by an owner or occupier of land depends upon the status of the injured person as invitee, licensee or trespasser. *Newton v. New Hanover County Bd. of Education*, 342 N.C. 554, 559, 467 S.E.2d 58, 63 (1996). The obligation owed to an invitee is higher than that owed to individuals in the remaining categories. *Id.* at 561, 467 S.E.2d at 63. Defendant's assertions to the contrary notwithstanding, we assume *arguendo* that plaintiff at the time of her injury was an invitee of defendant.

The owner or occupier of premises has a duty to an invitee to exercise ordinary care to keep the property in a reasonably safe condition and to warn of hidden or concealed dangers of which the owner has knowledge, either express or implied. *Newsom*, 114 N.C. App. at 788, 443 S.E.2d at 367. However, the owner is not an absolute insurer of the safety of an invitee, *Newsom*, 114 N.C. App. at 790, 443 S.E.2d at 368, and has no duty to warn an invitee of "a hazard obvious to any ordinarily intelligent person using [her] eyes in an ordinary manner." *Branks v. Kern*, 320 N.C. 621, 624, 359 S.E.2d 780, 782 (1987).

In the case *sub judice*, plaintiff described the two-story pier as a "large structure" and admitted she could see the pier from the launch area before attempting to parasail. Trogdon likewise characterized the pier as "a pretty big structure" and agreed it was visible from the launch area. There having been no contradictory evidence, therefore, it is undisputed the pier was an obvious structure, neither hidden nor concealed. Accordingly, defendant had no common law duty to warn plaintiff of the pier as it was a hazard obvious to any ordinarily intelligent person using her eyes in an ordinary way. *See Branks*, 320 N.C. at 624, 359 S.E.2d at 782. Lacking evidence of a genuine issue of material fact as to the essential element of a duty to warn, *see id.*, plaintiff's negligence claim was properly dismissed by the trial court on defendant's motion for summary judgment.

We note in closing that plaintiff's complaint, in addition to her negligence claim, also alleged defendant "breached its licensed/contractual obligation to operate the impoundment in a safe manner" thereby injuring plaintiff who was an "invitee of the defendant" and "a

direct intended beneficiary of the [FERC] license." However, plaintiff in her appellate brief fails to address the grant of summary judgment on the breach of contract claim and offers neither argument nor authority in support of reversal thereof. We therefore deem this contention abandoned. *See* N.C.R. App. P. 28(b)(5).

Based upon the foregoing, the order of the trial court granting summary judgment to defendant is affirmed.

Affirmed.

Judges LEWIS and SMITH concur.