NICHOLAS WREGLESWORTH, By His Mother and Legal Guardian, Barbara Wreglesworth, *et al.*, Plaintiffs, v. ARCTCO, INC., d/b/a Tigershark Watercraft, *et al.*, Defendants (Arctic Cat, Inc., *et al.*, Third-party Plaintiffs-Appellants; Timothy Lawrence *et al.*, Third-party Defendants; Pine Crest, Inc., Incorrectly Sued as Pine Crest Marina, Appellee).

First District (2nd Division)   No. 1—99—2663

Opinion filed November 14, 2000.

James Conte, of Lee, Mann, Smith, McWilliams, Sweeney & Ohlson, of Chicago, and Scott Olds, of James E. Olds, Ltd., of Grangeville, Idaho, for appellants.

James W. Fessler, Michael Resis, Glen Amundsen, and M. Bridget Walsh, all of O'Hagen, Smith & Amundsen, L.L.C., of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Third-party plaintiffs Arctic Cat, Inc., and Arctic Cat Sales, Inc. (hereinafter referred to collectively as Arctic Cat), appeal from an order of the Cook County circuit court dismissing their claim for contribution against third-party defendant Pine Crest, Inc. (incorrectly sued as Pine Crest Marina), the owner of a pier in Cedar Lake, Indiana. The order was made appealable pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). This appeal is the second arising from a July 1995 accident in which Nicholas Wreglesworth (Nicholas), a minor, sustained a serious head injury when a Tigershark personal watercraft in which he was riding as a passenger collided with the pier owned by Pine Crest and proceeded underneath it. Nicholas and his mother, Barbara Wreglesworth (Barbara), filed suit against Arctic Cat,

the manufacturer of the watercraft, alleging negligence, product liability and breach of warranty. Arctic Cat subsequently filed a third-party complaint for contribution against several other parties, including Pine Crest. In its order dismissing the third-party complaint against Pine Crest, the trial court approved Pine Crest's proposed $5,000 settlement with Nicholas and Barbara, finding that the settlement was made in good faith within the meaning of the Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/0.01 *et seq.* (West 1994)). The trial court also held that Pine Crest owed no duty to plaintiffs Nicholas and Barbara. On appeal, Arctic Cat argues that the trial court erred (1) in holding that Pine Crest owed no duty to plaintiffs, and (2) in finding that the settlement was made in good faith. For the reasons set forth below, we affirm the trial court's order dismissing the third-party complaint against Pine Crest.

## BACKGROUND

The underlying complaint against Arctic Cat was brought in July 1997 by Nicholas through Barbara and by Barbara individually. According to the complaint, the accident occurred on July 22, 1995, while Nicholas and his father, James Wreglesworth, both Illinois residents, were vacationing at Cedar Lake, Indiana, with other Illinois residents, including Vera Ortega. As noted, Nicholas was injured when a personal watercraft in which he was riding as a passenger collided with the pier owned by Pine Crest. At the time of the collision, the watercraft (also known as a jet-ski), which was owned by Indiana resident Timothy Lawrence, was being driven by Vera Ortega, who died as a result of the accident. Arctic Cat subsequently filed a counterclaim for indemnity based on a release that had been executed by Barbara. That agreement released Lawrence, Ortega and the Allstate Insurance Company (Lawrence's insurer) from liability in exchange for $100,000 (the limit of Lawrence's Allstate policy). The trial court granted plaintiffs' motion to dismiss Arctic Cat's counterclaim, and Arctic Cat appealed, arguing that under Indiana law Arctic Cat was included within the terms of the release.

In a separate appeal we affirmed the dismissal of Arctic Cat's counterclaim, holding that Illinois law applied. See *Wreglesworth v. Arctco, Inc.*, 316 Ill. App. 3d 1023 (2000). According to the stipulations of the parties, our decision in that case necessarily resolved any conflict-of-laws issues in the instant appeal. For that reason, we do not address choice-of-law issues here.

As noted, this appeal pertains only to a third-party complaint for contribution filed by Arctic Cat. Though Arctic Cat's second amended third-party complaint listed as defendants not only Pine Crest, the

subject of count IV, but also Timothy Lawrence, James Wreglesworth and the estate of Vera Ortega, who were the subjects of counts I, II and III, we are concerned in this appeal only with the complaint as it applies to Pine Crest. Apparently the third-party action against Ortega's estate and James Wreglesworth is still ongoing. It was dismissed against Lawrence.

In count IV of its second amended third-party complaint, Arctic Cat alleged that Pine Crest "carelessly and negligently failed to make sure the pier was reasonably safe for operation in connection with the watercraft," and "carelessly and negligently fail[ed] to warn Vera Ortega and Nicholas Wreglesworth of the unreasonably dangerous condition the pier posed to the watercraft." Accordingly, Arctic Cat sought contribution from Pine Crest in an amount commensurate with its negligence, in the event that Arctic Cat was found liable to Nicholas and Barbara.

Pine Crest moved for a good-faith finding and resultant dismissal of the third-party complaint, asserting that it had reached a proposed settlement for $5,000 with plaintiffs Nicholas and Barbara, "subject to a finding that the settlement was entered into in good faith." Pine Crest noted that under the Act a tortfeasor who settles in good faith is discharged from liability for contribution to other tortfeasors. As to the settlement amount, Pine Crest stated at oral argument that the $5,000 figure was approximately equivalent to the legal fees it would have incurred if it had moved for summary judgment.

In its brief in opposition to Pine Crest's motion, Arctic Cat alleged "a long-standing prior relationship" between Pine Crest and the Wreglesworths. According to Arctic Cat, that relationship explained "the low settlement [amount]" and showed that the settlement was not made in good faith. In its reply in support of its motion, Pine Crest responded to that allegation, attaching an affidavit of Robert Gross indicating that there was no such relationship. According to Gross, whose family owns Pine Crest, there was no personal or contractual relationship between Pine Crest and the Wreglesworths or Vera Ortega on the date of the accident, and no member of the Gross family or owner of Pine Crest had developed a relationship with any of those parties since then. Neither the Wreglesworths nor the owner of the watercraft had docking privileges at Pine Crest.

At the hearing on Pine Crest's motion, the following undisputed evidence was adduced. The accident occurred in the middle of the day, shortly before 1 p.m., when Ortega got into the watercraft, went out some distance in the lake, came back and hit the pier at a high rate of

speed.[1] As a result of this occurrence, Nicholas sustained, *inter alia*, a fractured skull. The pier is a fixed object along the shoreline and is clearly visible. Because it is fixed and not floating, the height of the pier varies depending on the water level of the lake. Rubber tires were positioned along certain portions of the pier to prevent boats from banging against the side.

Following the hearing, the trial court, as noted, granted Pine Crest's motion, finding that the settlement was entered into in good faith and dismissing Pine Crest from the third-party suit "pursuant to the settlement." The court stated: "I've heard the arguments and don't see any duty on the part of the defendant. So based on that, I think the $5,000 settlement is okay." This appeal followed.

## DISCUSSION

■ The Joint Tortfeasor Contribution Act (the Act) provides that a tortfeasor who settles in good faith with the injured party is discharged from contribution liability. See *In re Guardianship of Babb*, 162 Ill. 2d 153, 160, 642 N.E.2d 1195, 1199 (1994); *Bowers v. Murphy & Miller, Inc.*, 272 Ill. App. 3d 606, 608, 650 N.E.2d 608, 610 (1995). The requirement that the settlement be made in good faith is contained in section 2(c) of the Act. 740 ILCS 100/2(c) (West 1994). Section 2(d) then provides that "[t]he tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2(d) (West 1994). The term "good faith" is not defined in the Act, but a settlement is considered *prima facie* in good faith if the settling tortfeasor establishes that it was supported by consideration. *Solimini v. Thomas*, 293 Ill. App. 3d 430, 437, 688 N.E.2d 356, 361 (1997), citing *McDermott v. Metropolitan Sanitary District*, 240 Ill. App. 3d 1, 44, 607 N.E.2d 1271, 1297 (1992). The consideration does not have to be received; a mere promise to pay is sufficient to support a finding that the settlement was made in good faith. *Solimini*, 293 Ill. App. 3d at 437-39, 688 N.E.2d at 361-62. Once a *prima facie* showing of good faith is made, a presumption arises that the settlement is valid, and the burden shifts to the party challenging the settlement to show by a preponderance of the evidence that it was not made in good faith. *Orejel v. York International Corp.*, 287 Ill. App. 3d 592, 599, 678 N.E.2d 683, 688 (1997); *McDermott*, 240 Ill. App. 3d at 44, 607 N.E.2d at 1297; *Bowers*, 272 Ill. App. 3d at 610, 650 N.E.2d at 611. Lack of good faith is generally considered to be " 'tortious or wrongful conduct on the part of the settling party that amounts to

---

[1]According to a boating accident report, the watercraft's speedometer remained stuck at 42 miles per hour, which was believed to be the vessel's speed when it collided with the pier.

fraud or collusion.' " *Alvarez v. Fred Hintze Construction*, 247 Ill. App. 3d 811, 816, 617 N.E.2d 821, 824 (1993), quoting *McDermott*, 240 Ill. App. 3d at 44, 607 N.E.2d at 1297.

■ Factors that have been considered in determining whether a settlement was made in good faith include: (1) "whether the amount paid by the settling tortfeasor was 'within a reasonable range of the settlor's fair share [citations.]' " (*Babb*, 162 Ill. 2d at 161, 642 N.E.2d at 1199); (2) whether there was a close personal relationship between the settling parties (*Warsing v. Material Handling Services, Inc.*, 271 Ill. App. 3d 556, 560, 648 N.E.2d 1126, 1129 (1995)); (3) whether the plaintiff sued the settlor (*Warsing*, 271 Ill. App. 3d at 560, 648 N.E.2d at 1129); and (4) whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement (*Babb*, 162 Ill. 2d at 163, 642 N.E.2d at 1200). No single factor is seen as determinative. *Babb*, 162 Ill. 2d at 162, 642 N.E.2d at 1199. The trial court is to consider all of the surrounding circumstances in determining whether a settlement was made in good faith. *Babb*, 162 Ill. 2d at 162, 642 N.E.2d at 1199; *Orejel*, 287 Ill. App. 3d at 599, 678 N.E.2d at 688. A trial court's finding as to the good faith of a settlement is within the court's discretion, and it will be reversed on appeal only if there has been an abuse of discretion. *Babb*, 162 Ill. 2d at 162, 642 N.E.2d at 1200; *Solimini*, 293 Ill. App. 3d at 437, 688 N.E.2d at 361.

■ In the instant case, Pine Crest made a *prima facie* showing that the settlement was entered into in good faith. Under the terms of the settlement, Nicholas and Barbara were to discharge Pine Crest from liability in exchange for $5,000. Thus the agreement was supported by consideration, and the burden shifted to Arctic Cat to show that the settlement was not made in good faith. See *Orejel*, 287 Ill. App. 3d at 599, 678 N.E.2d at 688.

Arctic Cat's major contention is that the trial court erred in its holding that there was no duty and that therefore the $5,000 settlement amount is disproportionately small, thus establishing that the settlement was not made in good faith. This argument lacks merit and shall be addressed at some length.

According to Arctic Cat, Pine Crest had a duty to keep the pier in a reasonably safe condition by fully padding its sides and corners (and not just some portions of the pier), as well as a duty to warn of nonobvious dangers if the pier was not reasonably safe. Arctic Cat notes that because the pier was a fixed object and not floating, there was a risk that a watercraft could proceed *under* the pier when the water was low. Pine Crest argues that its pier is an open and obvious condition

and that it therefore had no duty to Nicholas. We agree with Pine Crest.

■ "A duty of care arises when the parties stand in such a relationship to one another that the law imposes upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 437, 566 N.E.2d 239, 242-43 (1990). "Whether a duty exists in a particular case is a question of law to be determined by the court." *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226 (1990).

■ Under the Premises Liability Act, an owner or occupier of any premises owes a duty of "reasonable care under the circumstances" to entrants who are not trespassers. 740 ILCS 130/2 (West 1994); *Menough v. Woodfield Gardens*, 296 Ill. App. 3d 244, 247, 694 N.E.2d 1038, 1040 (1998). The situation is essentially the same under the common law. *Ward*, 136 Ill. 2d at 141-42, 554 N.E.2d at 227. However, there is no such duty where the condition creating the risk is open and obvious. See *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447-48, 665 N.E.2d 826, 832 (1996) (persons who own, occupy, or control and maintain land are not required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious). The law generally assumes that persons who encounter such obvious and common conditions will take care to avoid any danger inherent in them. *Bucheleres*, 171 Ill. 2d at 448, 665 N.E.2d at 832. "The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Bucheleres*, 171 Ill. 2d at 448, 665 N.E.2d at 832. As our supreme court stated in *Ward*:

> "Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition. Even in the case of children on the premises, this court has held that the owner or possessor has no duty to remedy conditions presenting obvious risks which children would generally be expected to appreciate and avoid." *Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230.

Hence an owner or possessor of premises is not required to anticipate dangers that are open and obvious, even where children are involved. Here the term "obvious" means that " 'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Deibert*, 141 Ill. 2d at 435, 566 N.E.2d at 241, quoting Restatement (Second) of Torts § 343A, Comment *b*, at 219 (1965). Thus "[t]he issue of whether a condition is obvious is

determined by the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge." *Menough*, 296 Ill. App. 3d at 248-49, 694 N.E.2d at 1042; *Bucheleres*, 171 Ill. 2d at 457, 665 N.E.2d at 836.

■ The record in the instant case shows that Pine Crest's pier was open and obvious. It is undisputed that the pier was a visible structure, not latent or concealed. See *Bucheleres*, 171 Ill. 2d at 456, 665 N.E.2d at 836 (likelihood of injury increases where danger is concealed or latent, rather than open and obvious). As noted, the accident occurred in the middle of the day, shortly before 1 p.m. on July 22, 1995. Manifestly the pier would have been visible and apparent to a reasonable person at that time. Further, it is beyond question that a reasonable person would recognize the risk of injury resulting from colliding with the pier on a jet-ski at high speed, regardless of whether the pier was padded with rubber tires.

In *Bucheleres*, a case relied upon by Pine Crest, one of the plaintiffs was severely injured when he dived off a concrete seawall into Lake Michigan and struck his head on the sand bottom. The accident occurred one day before the official opening of Chicago beaches in spring 1988. Our supreme court held in *Bucheleres* that the defendant park district had no duty to the plaintiff even though the park district had recently added sand to the bottom of the lake to compensate for winter erosion, thus effectively making the lake shallower. There was also evidence that the surface level of the lake had dropped naturally by more than one foot during the months preceding the plaintiff's injury. The court held that the park district could have reasonably expected the plaintiff "to appreciate the risk associated with diving into water of unknown depth and shifting currents and sands." *Bucheleres*, 171 Ill. 2d at 459, 665 N.E.2d at 837. In other words, the lake presented an obvious danger. See also *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 57, 711 N.E.2d 773, 782-83 (1999) (holding that defendant association owed no common law duty to plaintiff who was severely injured when he used a rope swing and fell into a lake, hitting his head on the bottom; the plaintiff "knew and appreciated the risk of falling from the rope swing in such a manner as to land upside down in shallow water"); *cf. Young v. Chicago Housing Authority*, 162 Ill. App. 3d 53, 57, 515 N.E.2d 779 (1987) (holding that defendant housing authority did not owe duty to minor plaintiff who was injured when he fell from playground· monkey bars onto concrete surface below; court noted "common-sense principle" that "if you fall, you might get hurt," adding that "[a] five-year-old child knows that if he or she falls from a height onto concrete while *** playing on monkey bars, he or she probably will get hurt").

Similarly, in the instant case a reasonable person clearly would

recognize that if he collided with the pier on a jet-ski, he might get hurt. Just as with the lake in *Bucheleres*, the rope swing in *Bier*, and the concrete playground in *Young*, the pier in the instant case is an open and obvious condition that carries its "own warning of possible danger." *Bucheleres*, 171 Ill. 2d at 455, 665 N.E.2d at 835.

Notwithstanding the foregoing, Arctic Cat argues first that there is nothing in the record to indicate that either Vera Ortega or Nicholas was "cognizant of the condition [of] that corner of the pier [into which the jet-ski collided] or that it lacked rubber cushioning before the collision." That argument misses the point. As noted, the relevant question is not whether Ortega or Nicholas subjectively knew of the danger but whether a reasonable person would have recognized it and thus whether an owner or possessor of premises might reasonably expect such a person to recognize it. See *Bucheleres*, 171 Ill. 2d at 457, 665 N.E.2d at 836; Restatement (Second) of Torts § 343A, Comment *b*, at 219 (1965). As indicated, we believe that in this instance a reasonable person clearly would have recognized the danger and therefore that Pine Crest could not reasonably be expected to anticipate that people would fail to protect themselves from it. See *Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230.

We find the North Carolina case of *Croker v. Yadkin, Inc.*, 130 N.C. App. 64, 502 S.E.2d 404 (1998), to be particularly instructive since the facts there are directly analogous to the instant case. In *Croker*, the plaintiff was injured when she struck a pier while attempting to parasail. She stumbled as she prepared to take off, and when she reached tree level, the parasail turned toward the right, resulting in the plaintiff's hitting a pier which was licensed by the defendant. The trial court granted summary judgment for the defendant, and the appellate court affirmed, holding that the pier was "an obvious structure, neither hidden nor concealed," and the defendant thus had no common law duty to warn the plaintiff of it. *Croker*, 130 N.C. App. at 70, 502 S.E.2d at 408. The parasailer in *Croker* was in approximately the same situation as a passenger in the instant case. She was being pulled by a boat that lifted her into the air, and though she apparently had some control over the parasail, it was arguably the operator of the boat who was the driver. Nevertheless, the court held that the defendant had no duty to warn the plaintiff of a hazard that was "obvious to any ordinarily intelligent person using [her] eyes in an ordinary manner." *Croker*, 130 N.C. App. at 70, 502 S.E.2d at 408. Likewise we conclude that the pier in the instant case was open and obvious to any reasonable person, whether driver or passenger, and that Pine Crest therefore could not reasonably be expected to anticipate that people would fail to protect themselves from any danger posed by the pier. See *Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230.

Arctic Cat argues further that the dangerous condition here is not merely the possibility that a watercraft might run into the pier, but that it might proceed *under* the pier when the water level is low, given that Pine Crest's pier is a fixed object and not floating. According to Arctic Cat, the danger of proceeding under the pier is neither "detectable by your average boater" nor "recognizable by the reasonable person," and hence the dangerous condition here was not open and obvious. We disagree.

If the water level were low enough for a jet-ski to proceed under the pier after colliding with it, such a lowered water level would at minimum be more visible than the shallower water level of the lake in *Bucheleres*. There, the plaintiff could not have determined merely from observing the lake's surface that sand had been added to the bottom. Here, by contrast, a water level sufficiently lowered to allow a jet-ski to proceed under the pier would be visible by simply looking at the water's surface in relation to the pier. The court in *Bucheleres*, as noted, held that because the lake itself carried its own warning of possible danger, the defendant park district could reasonably have expected the plaintiff "to appreciate the risk associated with diving into water of unknown depth and shifting currents and sands." *Bucheleres*, 171 Ill. 2d at 459, 665 N.E.2d at 837. If sand added to the bottom of Lake Michigan in *Bucheleres* did not render the resultant shallower lake level latent or concealed, then surely a lowered water level in relation to Pine Crest's pier is not hidden or concealed either. Our conclusion here is reinforced by the not unreasonable belief that, were we to find a duty on such grounds, it would be tantamount to requiring all pier owners to have floating piers. We are not persuaded that it would be either practical or economically feasible to impose such a duty.

Arctic Cat attempts to counter the holding in *Bucheleres* with the holding in *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 706 N.E.2d 460 (1998), but that case is distinguishable. In *Jackson*, the 19-year-old plaintiff suffered cervical and spine fractures after diving into the "deep" end of a lake adjacent to a public bathing beach owned by the defendant. The injuries left him a quadriplegic, and he later died from complications related to those injuries. According to the plaintiff's mother, her son's injuries were caused when he hit his head on a submerged section of plastic pipe used by the defendant to adjust the level of the water. The trial court granted summary judgment in favor of the defendant and the appellate court affirmed, but our supreme court reversed, holding that the open and obvious doctrine was not dispositive of whether the defendant owed the plaintiff a duty. According to the court, there was no reason that the plaintiff or any other

patron "should reasonably have anticipated the presence of the underwater obstruction or the injuries it could produce." *Jackson*, 185 Ill. 2d at 426, 706 N.E.2d at 464. The court noted that bodies of water present "open and obvious danger[s]" but explained that "[t]he existence of that hazard [the submerged pipe] had nothing to do with the inherent characteristics of bodies of water; it stemmed solely from [the defendant's] conduct." *Jackson*, 185 Ill. 2d at 426, 706 N.E.2d at 464. The danger was compounded by the fact that the defendant would periodically move the pipe, making it virtually impossible for patrons to assess that the risks in a given area of the lake had changed.

Here the situation is very different. A drop in the water level in relation to the pier is not hidden in the sense that a pipe submerged in a lake is hidden. Further, unlike the submerged pipe in *Jackson*, such a lowering of the water level *is* an inherent characteristic of bodies of water and thus is a risk which a pier owner could reasonably expect a patron to recognize. In *Jackson*, it was the defendant who moved the pipe. Here, Pine Crest had nothing to do with the lowering (or raising) of the lake's water level.

■ However, the existence of an open and obvious condition is not a *per se* bar to the finding of a legal duty. See *Bucheleres*, 171 Ill. 2d at 449, 665 N.E.2d at 833; *Menough*, 296 Ill. App. 3d at 247, 694 N.E.2d at 1041. According to section 343A of the Restatement (Second) of Torts, which is quoted with approval in *Ward*, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added.) Restatement (Second) of Torts § 343A(1) (1965). Comment *f* to section 343A explains that reason to expect harm to visitors from known or obvious dangers may arise "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965). That is referred to as the distraction exception to the open and obvious doctrine. Comment *f* also describes a second exception, explaining that "[s]uch reason [to expect harm] may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965). That is commonly referred to as the deliberate encounter exception.

■ Arctic Cat argues that there is every reason to believe that, at the time of the accident, Nicholas was not looking forward but to the

side or at the back of the person seated in front of him in the watercraft. According to Arctic Cat, recreational sports such as watercrafting "often involve concentration on certain objects, such as the shore or the water passing by, especially by passengers." Thus Arctic Cat appears to argue that Nicholas was distracted or reasonably could be expected to be distracted in this situation. We disagree.

First, contrary to Arctic Cat's suggestions, there is nothing in this record to indicate that either Vera Ortega or Nicholas was distracted at the time of the accident. Second, as noted, the relevant question here is not whether Nicholas himself was distracted but whether a reasonable person in his position would have been. See *Deibert*, 141 Ill. 2d at 435, 566 N.E.2d at 241.

The distraction exception was held to apply in *Deibert*, where the plaintiff, a construction worker, exited a portable bathroom on a construction site and stepped into a rut left by a piece of heavy machinery, injuring his back. The bathroom was situated between two multistory buildings under construction, and upon exiting the bathroom the plaintiff looked up to ascertain whether construction materials were being thrown off a balcony that was above and near the bathroom. According to the plaintiff, workers had previously thrown construction materials off the balcony. The court in *Deibert* concluded that the rut was open and obvious, but held that the defendant construction company nonetheless owed the plaintiff a duty because it was foreseeable that a worker in that situation "would be momentarily distracted by the fear of possible falling debris from the balcony overhead, and stumble in a rut he would have otherwise noticed and avoided." *Deibert* 141 Ill. 2d at 439, 566 N.E.2d at 243. The court emphasized that it was the defendant who created the hazard which caused the distraction. "Had the construction workers not discarded debris off the balcony, thus endangering those below, plaintiff would not have been distracted." *Deibert* 141 Ill. 2d at 439, 566 N.E.2d at 243.

In the instant case, by contrast, there is no such clear indication that a distraction existed, nor that Pine Crest would have been the creator of the distraction claimed by Arctic Cat. If Ortega or Nicholas was concentrating on "the shore or the water passing by," that distraction would not have been the creation of Pine Crest. Moreover, such concentration would appear to be more in the nature of inattention than distraction. "The *Ward* [distraction exception] doctrine does not charge possessors of land with a duty to anticipate the harm that might result from an invitee's *inattention* to a known or obvious condition." (Emphasis added.) *Richardson v. Vaughn*, 251 Ill. App. 3d 403, 408-09, 622 N.E.2d 53, 57 (1993). "Instead, defendants' duty arises

where they could reasonably anticipate an invitee's distraction or momentary forgetfulness." *Richardson*, 251 Ill. App. 3d at 409, 622 N.E.2d at 57; see also *Bialek v. Moraine Valley Community College School District 524*, 267 Ill. App. 3d 857, 863, 864, 642 N.E.2d 825, 829, 831 (1994) (holding that there was no duty where plaintiff was injured when he ran into a goalpost (being used as a boundary marker) while running to catch a pass during a football game; court concluded that "[i]n these circumstances, a plaintiff will not be heard to claim that a distraction *of his own making* imposes a duty on the defendant" (emphasis added)); *cf. Richardson*, 251 Ill. App. 3d at 408-09, 622 N.E.2d at 57 (holding it unreasonable to require defendant to anticipate that plaintiff, while engaged in physical activities associated with an outdoor picnic, "would blind himself to the probable consequences of his own actions"). As noted, in the instant case the claimed source of distraction, namely, "the shore or the water passing by," unlike the potentially falling debris in *Deibert*, would not have been brought about by Pine Crest.

Arctic Cat relies principally upon *Menough v. Woodfield Gardens*, 296 Ill. App. 3d 244, 694 N.E.2d 1038 (1998), but that reliance is misplaced. In *Menough*, the plaintiff severely injured his ankle while he was playing basketball on a court located on the property of the defendant apartment complex. The court's backboard and net were mounted on a pole that was anchored in a concrete-filled tire, the front half of which extended in front of the pole. The plaintiff's injury occurred when he made a "lay-up" shot at the net and his foot landed on the tire, snapping his ankle. The court in *Menough* concluded that the tire was open and obvious, but held that the defendant owed a duty to the plaintiff "because it was reasonably foreseeable that the plaintiff would have been distracted and fail to see the tire." *Menough*, 296 Ill. App. 3d at 248, 694 N.E.2d at 1042. According to the court, the defendant had reason to anticipate that a person "would become distracted while approaching the net with the basketball to score a basket, forgetting the presence of the tire which protruded into the area underneath the net." *Menough*, 296 Ill. App. 3d at 249, 694 N.E.2d at 1042. At the time of the accident in *Menough*, the plaintiff's attention was "aimed at scoring a point," which the court emphasized was "the purpose for which the basketball hoop had been installed." *Menough*, 296 Ill. App. 3d at 251, 694 N.E.2d at 1043. The condition which caused the distraction was the backboard and net itself, and the playing of the game for which the net was put there in the first place. Thus, similar to the situation in *Deibert*, the distracting condition was linked directly to the defendant. Here, as noted, unlike the situation in *Menough* and *Deibert*, whatever distraction might

have existed for Ortega or Nicholas had nothing to do with Pine Crest, which did not place other boats in the lake nor did it place the jet-ski there. We therefore find *Menough* inapposite to the instant case.

Arctic Cat argues further that the deliberate encounter exception applies here as well. We disagree.

As noted, the deliberate encounter exception applies "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965). An example of this exception is provided in illustration 5, which is quoted favorably by our supreme court in *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 393, 706 N.E.2d 441, 449 (1998):

> "A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C."

Restatement (Second) of Torts § 343A, Illustration 5, at 221 (1965). It would appear from this illustration that some sort of economic compulsion such as loss of employment lies at the root of the invitee's decision to deliberately encounter the obvious danger. See *LaFever*, 185 Ill. 2d at 395, 706 N.E.2d at 449 (holding that defendant owed plaintiff a duty where the plaintiff, a "roll-off" driver employed to pick up and dispose of debris at the defendant company's facility, slipped on "edge trim" at that facility and fell, injuring his back; court held that the deliberate encounter exception applied, explaining that the defendant company "could reasonably foresee an 'economic compulsion' [citation] imposed on the roll-off drivers to perform the work they were hired to do," and that the defendant therefore had reason to know that these drivers "would deliberately encounter the hazard in order to fulfill their obligations and, consequently, keep their jobs").

■ In the instant case, by contrast, there is no indication of any economic compulsion or indeed of any other sort of impetus under which a reasonable person in Ortega's position would deliberately encounter the danger of colliding with the pier. We therefore conclude that Pine Crest had no reason to expect that Ortega would proceed to encounter this obvious danger, and thus Pine Crest could not reasonably be expected to protect against it. Hence the deliberate encounter exception does not apply.

■ Accordingly, we conclude that the condition presented by Pine Crest's pier was open and obvious, and neither of the two exceptions

to that doctrine is applicable in the instant case. Pine Crest owed no duty of care, and it necessarily follows that there was no negligence. See *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388, 706 N.E.2d 441, 446 (1998) ("Unless a duty is owed, there is no negligence").

Therefore, contrary to Arctic Cat's contentions, the $5,000 settlement amount was not disproportionately small compared to Pine Crest's fault, which was nonexistent. Indeed, since Pine Crest owed no duty, the only amount that would have been "within a reasonable range of [its] fair share" (*Babb*, 162 Ill. 2d at 161, 642 N.E.2d at 1199) is zero. As noted, Pine Crest indicated that the $5,000 figure was approximately equivalent to the legal fees it would have incurred if it had moved for summary judgment. Under these circumstances the $5,000 settlement amount clearly does not suggest bad faith.

Even if Pine Crest had borne some minimal amount of fault, the result would be the same. As the court observed in *Alvarez v. Fred Hintze Construction*, 247 Ill. App. 3d 811, 816, 617 N.E.2d 821, 825 (1993), "Illinois' courts have consistently rejected challenges to good-faith settlements based upon alleged disparities between the value of the settlement and the settling tortfeasor's relative culpability for the plaintiff's damages." Implicit in that view is the recognition that " 'settlements may be substantially different from the results of litigation because damages are often speculative and the probability of liability uncertain.' " *Alvarez*, 247 Ill. App. 3d at 816, 617 N.E.2d at 825, quoting *Smith v. Texaco, Inc.*, 232 Ill. App. 3d 463, 469, 597 N.E.2d 750, 755 (1992). Here of course the probability of liability is not uncertain. Pine Crest has none.

Arctic Cat also argues that the settlement was tainted by Pine Crest's attempts to prevent full discovery concerning such matters as the condition of the pier, the use of rubber tires to protect against direct collisions, and the presence of the boating public on the pier. This argument also is without merit. First, while Pine Crest may not have been as forthcoming in discovery as Arctic Cat would have liked, the record shows that it did provide information as to the use of tires. In its response to Arctic Cat's request to produce, Pine Crest included copies of photos, some of which clearly showed rubber tires placed along some side portions of the pier, apparently to prevent boats from banging against the side. Pine Crest also conceded in its answers to interrogatories that rubber tires were used. Second, as to the presence of the boating public on the pier, Pine Crest conceded in response to requests for admissions that, prior to the date of the accident, personal watercraft had operated in Cedar Lake within 100 yards of the pier. Third, notwithstanding the relative sufficiency or insufficiency of these responses, it is undisputed that Arctic Cat filed no motion to

compel discovery. Finally, we note that the question of whether additional discovery is necessary in order to make a good-faith finding is addressed to the trial court's discretion. See *Ruffino v. Hinze*, 181 Ill. App. 3d 827, 830 n.1, 537 N.E.2d 871, 873 n.1 (1989). We cannot say based on this record that any failure on the part of the trial court to order additional discovery was an abuse of discretion.

In addition, Arctic Cat presents no evidence that there was a personal relationship between the Wreglesworths and Pine Crest. Indeed, as noted, Robert Gross asserts in his affidavit that there was no such relationship. According to Gross, whose family owns Pine Crest, there was no personal or contractual relationship between Pine Crest and the Wreglesworths or Vera Ortega on the date of the accident, and no member of the Gross family or owner of Pine Crest had developed a relationship with any of those parties since then.

Applying a totality-of-the-circumstances approach, we conclude that Arctic Cat has not met its burden of demonstrating "tortious or wrongful conduct on the part of the settling party that amounts to fraud or collusion" (*Alvarez*, 247 Ill. App. 3d at 816, 617 N.E.2d at 824), and it thus has failed to show that the settlement was not made in good faith. Hence we cannot say that the trial court's finding of good faith here was an abuse of discretion, and we therefore affirm that finding.

Since the settlement was made in good faith within the meaning of section 2(c) of the Act, Pine Crest is discharged from contribution liability (see 740 ILCS 100/2(d) (West 1994)), and we therefore affirm the trial court's order dismissing the third-party complaint for contribution against Pine Crest.

Affirmed.

CAHILL, P.J., and COUSINS, J., concur.