202 F.Supp.2d 950 (2001)
Ted S. ANDERSON, et. al., Plaintiffs,
v.
THE PRINCIPIA CORP. d/b/a, Principia College, Defendant.
No. 4:00CV76SNL.
United States District Court, E.D. Missouri, Eastern Division.
December 31, 2001.
*951 *952 Paul J. Passanante, Simon and Lowe, St. Louis, MO, for plaintiffs.
Jeffrey L. Cramer, Brown and James, P.C., St. Louis, MO, for defendant.

MEMORANDUM
LIMBAUGH, Senior District Judge.
Plaintiffs, as the parents and co-administrators of the estate of their decedent son, Mayer Clay Anderson, have filed this negligence and wrongful death action asserting that defendant failed to take certain safety precautions to prevent their son's fall from a bluff overlooking the Mississippi River. This matter is before the Court on the defendant's motion for summary judgment (# 14), filed March 26, 2001.[1] Responsive pleadings have been filed. This cause of action is set for a jury trial on the Court's docket of May 6, 2002.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
As stated before, once the moving party has met its burden to demonstrate the absence of any genuine issue of material fact, the non-moving party can not simply rest on mere denials or allegations in the pleadings. The non-moving party must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact. Rouse v. Benson, 193 *953 F.3d 936, 939 (8th Cir.1999) citing Celotex, supra. and Webb v. Lawrence County, 144 F.3d 1131, 1134-35 (8th Cir.1998). The Court will now examine the facts set forth by the evidentiary record.
The facts in this case are largely undisputed.[2] Defendant Principia College is a four-year liberal arts college located in Elsah, Illinois. It is owned and operated as an institution of higher learning based on Christian Science theology and tenets by the Principia Corporation. The college is located on 2600 acres of real property (owned by the Principia Corporation) sitting on an elevated woodland area high above the Mississippi River. Along the southern border of the school property are massive, vertical rock bluffs. Defendant's Exhibit 5Affidavit of Paul Dixon with attached exhibits A and B (aerial photographs).[3] At the time of his accident, decedent Mayer Anderson was a freshman at the college and had been on the campus approximately three (3) months. As a Christian Science institution, the college had a strict no-alcohol policy for its students.
On the night of Friday, November 13, 1998, decedent and five (5) other Principia College students planned a party on one of the more remote river bluffs on school property. The other five (5) students were: Dylan Brunjes, Dan Hill, Simon Zimmerman, G.T. Weir, and Charlie Eubank. Brunjes and Zimmerman were upperclassmen, all the others (including decedent) were freshmen. The group, including decedent, decided to take alcoholic beverages to the bluff and all of them contributed financially for the purchase of alcohol from a gas station in Grafton, Illinois. Eighteen cans of beer, a bottle of whiskey, and a bottle of vodka were purchased.
The bluff chosen is approximately sixtenths of a mile from the western edge of the campus proper. It is beyond the recognized campus landmarks: Chapel Green, Voney Art Studio, and the Writer's Cabin.[4] Of the group, only Simon and Dylan knew how to get to the accident site. Since Simon had gone to get the liquor and Dylan had a school project to finish, two other upperclassmen agreed to show the others how to get to the accident site.[5] To get to the bluff, the group had to pass several warning signs[6] and a fence barrier. *954 Deposition of Charlie Eubanks, pg 26. There is no discernible trail past the Writer's Cabin to the accident site; the group had to go through a wooded steep area with an abundance of undergrowth. Eubank Deposition, pgs. 13-14, 26, 32; Deposition of Arno List[7] (Plaintiffs Exhibit 1; Exhibit B to Defendant's Reply), pgs. 18-19, 27; Deposition of Chestnut Booth (Plaintiffs Exhibit 2), pgs. 66-73. There is a bluff trail that runs near the water treatment plant; however, this is not a trail that continues up to the accident site. List Deposition, pgs. 47-48.
The young men were all assembled on the bluff around 1:00 a.m. (now on November 14, 1998). Upon first arriving at the bluff, G.T. expressed his opinion that it was dangerous to be out on this bluff due to a danger of falling. Dylan responded that they would stay off the edge which could be clearly seen. Eubank deposition, pgs. 16, 23. Out on the bluff the group made a campfire, sat around talking, and eventually began drinking the liquor. Mayer and Dan drank the hard liquor in a short period of time and became visibly intoxicated. Booth Deposition, pgs. 60-61, 78; Eubank Deposition, pgs. 17-18.
Around 2:45 a.m. Dylan and Charlie were standing near the front of the bluff waving a flashlight in an attempt to get the attention of a barge down on the river. Standing behind them were Dan and Mayer. Suddenly, G.T. yelled Mayer's name. Charlie turned and saw that Mayer was gone and Dan was trying to get over the edge of the bluff in an attempt to reach Mayer. While Charlie was holding on to Dan, G.T. and Dylan ran back through the woods and down to the Great River Road[8] in order to climb back up to where Mayer had fallen. Eubank Deposition, pgs. 16-20. They found Mayer seriously injured but still breathing. Charlie, Dan, and Simon ran through the woods, discarding the bottles and cans, back to Lowry Hall (on or near campus) to call security. Eubank Deposition, pgs. 22-23. Medical help soon arrived and Mayer was taken by helicopter to Barnes-Jewish Hospital in St. Louis. Mayer died of his injuries shortly thereafter. The other five students involved in this incident were expelled from the college for reckless endangerment.
As stated previously, the material facts in this case are largely undisputed. There are only six (6) points raised in the defendant's statement of uncontroverted material facts to which the plaintiffs attempt to dispute. Paragraph # 7[9] refers to the accident site being depicted in Exhibits B and C to the Dixon Affidavit. Plaintiffs respond by stating [p]laintiffs lack information and belief's to whether the photographs depict the accident site and therefore plaintiffs deny the allegation contained in paragraph 7. However, plaintiffs must ultimately concede that said photographs accurately show the accident site since they cite to these two exhibits as part of their recitation of material background facts on page 2 of their Memorandum in Opposition when referring to the bluff where Mayer fell. Paragraph 16 again refers to defendant's Exhibits B and C as showing the bluff where Mayer fell and depicting the danger of falling as *955 open and obvious. Plaintiffs respond [p]laintiffs deny the conclusion asserted in paragraph 16 as the photographs speak for themselves. Although the plaintiffs apparently do not deny that the photographs show the bluff (which they had previously denied as to Paragraph 7) they dispute that the photographs show an open and obvious danger of falling. Although the Court can understand their desire to deny the legal conclusion put forth by the defendant, the problem is that Local Rule 4.01(E) requires plaintiffs to set forth specific references to portions of the record upon which the denial is based. The plaintiffs have failed to cite to any portion of the evidentiary record (either submitted by defendant or the plaintiffs) to support their denial that the bluff did not present an open and obvious danger of falling from it. Paragraph 19 refers to the fact that the edge of the bluff could be clearly seen. Plaintiffs concede that Charlie Eubanks so testified that the edge of the bluff could be clearly seen but deny that Mayer clearly saw the edge of the bluffs before his fall. Again, the plaintiffs fail to cite to any portion of the evidentiary record which supports this conclusion on their part. Paragraph 22 states that during freshmen orientation, students (including Mayer) were told by college officials that the bluffs were high, dangerous, and unstable; furthermore, they were repeatedly warned to stay off of the bluffs. Plaintiffs admit that Ian Forber-Pratt[10] so testified, but deny that Mayer had received any such warnings. Again, plaintiffs fail to cite to any portion of the evidentiary record to support this denial. Paragraph 24 refers to the fact that two of Mayer's teachers (Judy Felch and Sarah Perkins) had both told Mayer of the danger of the bluffs and not to go out on them. Plaintiffs admit that these two witnesses so testified but deny that Mayer received such warnings; however, again, plaintiffs fail to cite to any portion of the evidentiary record to support their denial that Mayer had not received such warnings. Finally, Paragraph 27 refers to the fact that when Ms. Felch was out near the bluffs with her art students (including Mayer), she could clearly see the signs and that Mayer was in her presence when she could see the signs and he would have seen the signs if he had been looking. Plaintiffs admit that Ms. Felch so testified but deny that Mayer ever saw the warning signs. Once again, plaintiffs fail to cite to any portion of the evidentiary record to support their denial that Mayer had not seen the warning signs before his fall.
These six (6) denials, without any citation to the evidentiary record to support the denials, fail to create valid disputes of material fact. Accordingly, each of the material facts set forth by the defendant in its statement of uncontroverted material facts is deemed admitted.
In their complaint, plaintiffs assert that the defendant was negligent for failing to warn of the risk of falling from the bluffs on the defendant's property, and for failing to erect barricades or otherwise restrict access to the accident site. Defendant contends that under the applicable law[11] plaintiffs are barred from recovery because 1) the danger of falling from the bluff was open and obvious; and 2) defendant was unaware of any of its students regularly frequenting this particular bluff, therefore, decedent's presence on this particular bluff was unforeseeable, and defendant had no duty to take additional steps to warn of the dangers of falling from this *956 bluff or otherwise restricting access to it. Plaintiffs respond that although the danger of falling from the bluff may have been open and obvious, defendant was not relieved of its duty to protect Mayer from falling from the bluff because it was reasonably foreseeable that alcohol consumption would distract him from appreciating the danger of falling. They further contend that defendant was aware of students visiting the bluffs in general, was aware that students had visited this particular bluff in the past, that the accident site was easily accessible; thus, access to it should have been restricted.
After careful review of the parties pleadings, the submitted evidentiary record, and the relevant caselaw, the Court finds the plaintiffs challenge to the summary judgment motion to be meritless, and that summary judgment should be granted to the defendant.
In a negligence action, a plaintiff must establish that 1) the defendant owed the plaintiff [or in this case, decedent Mayer Anderson] a duty of care; 2) that the defendant breached that duty; and 3) the defendant's breach proximately caused the plaintiff's [Mayer Anderson's] injuries. Mt. Zion State Bank & Trust v. Consolidated Communications, 169 Ill.2d 110, 116, 660 N.E.2d 863, 867-8, 214 Ill.Dec. 156, 160-61 (Ill.1995); Buchaklian v. Lake County Family Young Men's Christian Association, et. al., 314 Ill.App.3d 195, 199, 732 N.E.2d 596, 599, 247 Ill.Dec. 541, 544 (Ill.App.2000). Unless a duty is owed, there is no negligence. American National Bank & Trust Co. v. National Advertising Co., 149 Ill.2d 14, 26, 171 Ill.Dec. 461, 594 N.E.2d 313 (Ill.1992); see, LaFever v. Kemlite Co., 185 Ill.2d 380, 388, 706 N.E.2d 441, 446, 235 Ill.Dec. 886, 891 (Ill. 1998) quoting American National Bank, supra.; Buchaklian, 247 Ill.Dec. 541, 732 N.E.2d. at 599 quoting American National Bank, supra. A duty of care arises when the parties stand in such a relationship to one another that the law imposes upon defendant an obligation of reasonable conduct for the benefit of plaintiff. Deibert v. Bauer Bros. Construction Co., 141 Ill.2d 430, 437, 152 Ill.Dec. 552, 566 N.E.2d 239, 242-43 (Ill.1990); see also, Bucheleres, et. al. v. The Chicago Park District, 171 Ill.2d 435, 445, 665 N.E.2d 826, 831, 216 Ill.Dec. 568, 573 (Ill.1996); Wreglesworth v. Arctco, Inc., 317 Ill.App.3d 628, 635, 740 N.E.2d 444, 450, 251 Ill.Dec. 363, 369 (2000). The existence of a duty is a question of law for the court to determine. LaFever, 235 Ill. Dec. 886, 706 N.E.2d. at 446; Bucheleres, 216 Ill.Dec. 568, 665 N.E.2d. at 831; Ward v. K Mart Corp., 136 Ill.2d 132, 140, 143 Ill.Dec. 288, 554 N.E.2d 223, 226 (Ill.1990). If the plaintiff fails to establish an element of the cause of action, including a duty, summary judgment for the defendant is proper. Buchaklian, 247 Ill.Dec. 541, 732 N.E.2d. at 599 citing Espinoza v. Elgin, Joliet & Eastern Ry., 165 Ill.2d 107, 114, 208 Ill.Dec. 662, 649 N.E.2d 1323 (Ill.1995).
Initially, a court determines whether a duty of care exists by looking at four (4) factors which include the reasonable (1) foreseeability and (2) likelihood of injury ... (3) the magnitude of the burden on defendant in guarding against injury and (4) the consequences of placing that burden on the defendant. LaFever, 235 Ill. Dec. 886, 706 N.E.2d. at 446; Ward, 143 Ill.Dec. 288, 554 N.E.2d. at 232; Buchaklian, 247 Ill.Dec. 541, 732 N.E.2d. at 599. Where, as in this case, the plaintiffs allege that decedent was injured by a condition on the defendant's property, a court must decide the foreseeability prong of the duty test by reference to Section 343 of the Restatement (Second) of Torts. LaFever, 235 Ill.Dec. 886, 706 N.E.2d. at 447 (citations omitted). Section 343 states in relevant part:

*957 A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger. Restatement (Second) of Torts § 343 (1965).
Pursuant to Section 343, defendant Principia College would have met the foreseeability prong of the duty test and owed decedent a duty of care. However, the Court's analysis is not over.
Ordinarily, under Illinois law, persons who own, occupy or control and maintain land are not required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious. Bucheleres, 216 Ill.Dec. 568, 665 N.E.2d. at 832; Buchaklian, 247 Ill.Dec. 541, 732 N.E.2d. at 600; Menough v. Woodfield Gardens, 296 Ill.App.3d 244, 247, 694 N.E.2d 1038, 1041, 230 Ill.Dec. 760, 763 (Ill.App.1998). The law generally assumes that persons who encounter conditions such as fire, height, and bodies of water will take care to avoid any danger inherent in such conditions. Bucheleres, 216 Ill.Dec. 568, 665 N.E.2d. at 832; Wreglesworth, 251 Ill.Dec. 363, 740 N.E.2d. at 450; Buchaklian, 247 Ill.Dec. 541, 732 N.E.2d. at 600. The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks. Bucheleres, 665 N.E.2d. at 832. As the Illinois Supreme Court noted in Ward:
Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition. Even in the case of children, this court has held that the owner or possessor has no duty to remedy conditions presenting obvious risks which children would generally be expected to appreciate and avoid.
Ward, 143 Ill.Dec. 288, 554 N.E.2d. at 230. However, the Ward Court further cited with approval Section 343A which limits the liability of possessors of land for open and obvious dangers as follows:
A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. (emphasis added) Restatement (Second) of Torts § 343A (1965).
Ward, 143 Ill.Dec. 288, 554 N.E.2d. at 231-32; see also, LaFever, 235 Ill.Dec. 886, 706 N.E.2d. at 447 citing Ward. Thus, the existence of an open and obvious condition is not a per se bar to the finding of a legal duty. Bucheleres, 216 Ill.Dec. 568, 665 N.E.2d. at 833; Ward, 143 Ill.Dec. 288, 554 N.E.2d. at 231-32; Menough, 230 Ill.Dec. 760, 694 N.E.2d. at 1041.
The Illinois Supreme Court has recognized an exception for forgetfulness or distraction to the general rule of no liability for open and obvious conditions. The forgetfulness or distraction exception is predicated on a court determining whether the owner or possessor of the real property should anticipate the harm despite the obviousness as set forth in comment f to § 343A and cited with approval in LaFever, Bucheleres, and Ward:

*958 [R]eason to expect harm to visitors from known or obvious dangers may arise `where the possessor has reason to expect that the invitee's attention may be distracted', so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it ...
Restatement (Second) of Torts § 343A, comment f, at 220 (1965).
In the few instances wherein the Illinois courts have applied the forgetfulness or distraction exception doctrine, its application was under narrow circumstances clearly showing that the defendant in the exercise of reasonable care should anticipate that the plaintiff will fail to see and appreciate the dangerous conditions. See, Ward, Deibert, and Menough. In Ward, a customer of defendant collided with a five-foot concrete post positioned just outside an exit door of the store. At the time of his collision with the post, the plaintiff was carrying a large purchased item which obscured his vision. There was no question that the concrete post constituted an open and obvious danger which the plaintiff had observed upon entering the store; however, the Ward Court held that the defendant could have reasonably foreseen that customers leaving its store would be momentarily distracted by carrying large packages, and even in the exercise of due care for their own safety, would collide with the post. Ward, 143 Ill.Dec. 288, 554 N.E.2d. at 223. In Deibert, a construction worker stepped out of a portable toilet at a construction site, and looking upward to check for falling debris, stumbled over a large rut and sustained injuries. At the time of his injury, the portable toilet was located near a balcony from which other workers had been routinely throwing debris and the rut was located directly in front of the portable toilet. The Deibert court concluded that the defendant could have reasonably foreseen upon exiting the portable toilet, a construction worker would first look upward to check for falling debris, momentarily being distracted from looking out for the rut. Deibert, 152 Ill. Dec. 552, 566 N.E.2d. at 243-44. Finally, in Menough, a guest of an apartment complex was injured while playing basketball on a court located on the apartment complex property. The basketball court consisted of a single pole anchored inside a concrete-filled tire. The front half of the tire extended in front of the pole and the back half of the tire extended behind the pole. The backboard and the net were directly attached to the pole, and the backboard was flush with the pole so that the tire extended to the front of the backboard and into the playing area. Menough, 230 Ill.Dec. 760, 694 N.E.2d. at 1040. While making a lay-up shot the plaintiff came down onto the tire and sustained a severe fracture and sprain of his ankle. The Menough Court held it was reasonably foreseeable that a person playing basketball on the defendant's court would step onto the tire that extended underneath the basketball net immediately after attempting to make a shot. Furthermore, it was reasonably foreseeable that in the spirit of competitive play a person would become distracted while approaching the net with the basketball intent on making a basket, forgetting about the presence of concrete in the tire which protruded into the area underneath the net. Menough, 230 Ill. Dec. 760, 694 N.E.2d. at 1042.
The common thread running through these cases is the court's conclusion that although a dangerous condition was open and obvious, the landowner could reasonably be expected to anticipate that individuals exercising ordinary care will fail to avoid the risk of danger because they are distracted or momentarily forgetful. Menough, 230 Ill.Dec. 760, 694 N.E.2d. at 1042. Such a duty upon the landowner, however, is not absolute. This is not to say that the defendant must anticipate negligence on the part of the plaintiff. *959 Generally, a party need not anticipate the negligence of others. Ward, 143 Ill.Dec. 288, 554 N.E.2d. at 232 (citations omitted). The inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may be reasonably expected to be distracted, [as when carrying large bundles] or forgetful of the condition after having momentarily encountered it. Ward, 143 Ill.Dec. 288, 554 N.E.2d. at 232; see, Deibert, 152 Ill.Dec. 552, 566 N.E.2d. at 243-44 quoting Ward, supra; see also, Wreglesworth, 251 Ill.Dec. 363, 740 N.E.2d. at 453 (the relevant question is not whether the plaintiff himself was distracted but whether a reasonable person in the plaintiff's position would have been distracted).
Plaintiffs do not dispute the fact that under Illinois law the bluff from which Mayer fell constitutes and open and obvious danger. They argue that defendant is liable because the forgetfulness or distraction exception doctrine applies to this case. Specifically, plaintiffs argue that defendant's strict no-alcohol policy was the direct cause of the accident because defendant should have known that those students who do drink will foreseeably go to extreme measures to do so, including seeking out a remote point on the bluffs where they are less likely to be discovered. Plaintiffs Memorandum in Opposition, pg. 5. It is their belief that defendant should have foreseen and guarded against students using the bluffs to drink knowing that alcohol consumption may cause students to be distracted or forgetful of the hazards of the bluff. Although the Court appreciates the plaintiffs tremendous loss, their theory of liability against defendant lacks merit.
The undisputed evidence before this Court strongly shows that defendant had no reason to foresee that students (drinking alcohol or otherwise) would be socializing on this particular bluff. This is a remote bluff not easily accessible. There is no discernible pathway to it and requires hiking through dense woods and underbrush to get to it. Contrary to the plaintiffs assertion, the bluff was not a regular hangout place for students; very few students were knowledgeable about its existence or how to get to it. There is no evidence which substantiates the plaintiffs claim that it was a well-known gathering spot referred to by students as the point. There is no evidence that any college official, faculty member or staff member ever referred to this particular bluff as the point.
The evidence shows that out of its 70 + years history, the bluffs on the defendant's property have been the site of three (3) other falls: in 1980 or 81 a student jumped from a bluff near Chapel Green; in 1986 a student presumably jumped from a bluff (the exact location unknown but not near the bluff in question); and in 1993 a student lost her footing near Writers Cabin and sustained a minor injury. Furthermore, a rock-throwing incident was observed on a bluff (again not the bluff in question); however, the participants were never identified as Principia College students. In light of these incidents, the defendant had erected five (5) warning signs and fencing encompassing the bluffs which had been visited by students, and closed the Writers Cabin to inhibit persons (especially students) from going beyond the campus proper.
Despite the plaintiffs unsupported speculations, the evidence would convince any reasonable juror that Mayer was aware of the dangers of the bluffs. It is undisputed that his teachers verbally warned Mayer of the dangers of the bluffs. Mayer was part of a freshmen class that was subjected to numerous warnings about the bluffs during freshmen orientation. *960 His research areas were within the presence of the warning signs. He wrote in his journal shortly before his death of his observation that rain was causing a great deal of erosion on the bluffs because of the abrupt dropoff down to the Mississippi River. On that fateful night, G.T. and Dylan, while in Mayer's presence, spoke of the dangers of falling off the bluffs.
Given the facts in evidence before this Court, the Court cannot find, as a matter of law, that alcohol consumption was a reasonably foreseeable distraction. Firstly, the Court notes, that the plaintiffs have never admitted in any of their pleadings that their son was indeed consuming alcohol on November 13-14, 1998. This omission in and of itself is fatal to their contention that alcohol consumption was a foreseeable distraction. Even overlooking this material error, the Court still cannot, as a matter of law, find that alcohol consumption was a reasonably foreseeable distraction.
The cases in which the courts applied the distraction exception to the open and obvious rule had a common factor: the distraction or hazard which caused the distraction was created by the defendant. For example, in Deibert, the defendant had placed the portable toilet near the rut and had been aware of its workers throwing debris off the balcony above the toilet. In Ward, defendant had placed the concrete post in close proximity to the exit from which its customers would be exiting while holding purchases from the defendant's store. In the present case, defendant did not buy the alcohol consumed and in fact, strongly counseled its students against alcohol consumption. Furthermore, there was nothing that night on the bluff that concealed or obscured the height of the bluff or prevented Mayer from seeing the edge of the bluff. Finally, the consumption of a large quantity of hard alcohol (especially in an extremely short amount of time) while on a bluff is not the exercise of ordinary care for one's own safety. Defendant cannot be held accountable for Mayer's decision to engage in negligent (albeit extremely perilous) conduct while in the presence of an open and obvious danger.
Even assuming that Mayer's intoxication was a distraction which momentarily prevented him from appreciating the dangers of the bluff, there is insufficient affirmative evidence showing that defendant was aware of wide-spread abuse of its no-alcohol policy and that students were going out on bluffs, especially this particular bluff, in order to avoid detection of their drinking. Plaintiffs only evidence of knowledge on the part of the defendant is a student newspaper article allegedly quoting Chestnut Booth as to campus drinking. This article has not been authenticated and there is no affirmative evidence submitted to support the veracity of the statements offered through this newspaper article. Plaintiffs have not offered any testimony by Ms. Booth regarding her alleged statements in this article. Furthermore, the statement offered by the plaintiffs is not an actual statement by Ms. Booth but rather the author's interpretation and analysis of alleged statements made (which are not made part of the article):
Although no one knows for sure how much drinking actually goes on here, Booth estimates that 50 to 75 percent of students will at least experiment sometime during their time at Prin. These numbers do not represent the percentage that drink regularly, which she feels is smaller.[12]
*961 All this paragraph does is allegedly paraphrase statements made out of court by Ms. Booth regarding alcohol consumption at Principia College. Furthermore, the paragraph does not demonstrate that Ms. Booth or any other college official was aware of drinking on campus or of drinking by students up on any particular bluff. Other than this student newspaper article, plaintiffs offer no other evidence that rebuts the testimony of List, Moffett, and Felch that defendant was unaware of wide-spread drinking anywhere on campus, especially out on any particular bluff, including the one from which Mayer fell.
The evidence before this Court clearly demonstrates to any reasonable juror that Mayer was well aware of the dangers of drinking and of the dangers of the bluffs. Furthermore, he was well aware of the school's no-alcohol policy.[13] He consciously and voluntarily chose to go to the accident site, to participate in the purchase of alcohol, and to consume that alcohol while up on the bluff. He was not distracted by alcohol when he made the decision to go to the bluff, when he bypassed the warning signs, when he climbed through or over the fence, and when he initially arrived at the bluff where its edge was in clear view. Mayer's distraction was of his own making and did not exist despite Mayer exercising reasonable care for his own safety. In fact, Mayer's distraction was the direct result of his failure to exercise reasonable ordinary care for his own safety. There simply is no affirmative evidence to indicate that defendant should have reasonably foreseen that Mayer would be distracted by consuming alcohol and, forgetting the height of the bluff, act in such a manner as to fall from the bluff. The distraction or forgetfulness exception doctrine is inapplicable to the case at hand.
The defendant's premises was in its natural condition. There were no hidden dangers at the accident site. There was no history of similar accidents at the accident site. The extreme risk of falling from the bluff was something any person of ordinary sensibilities would have recognized. Hall v. U.S., 647 F.Supp. 53, 56 (C.D.Ill. 1986). There is no question that the danger of falling of the bluff in question was obvious and that the danger would have been apparent to a young man of Mayer's age and intelligence. It is difficult to imagine a danger more open and obvious that a cliff which is clearly visible to a trespasser or in this case, an invitee.[14]Blakely v. Camp Ondessonk, 38 F.3d 325, 328 (7th Cir.1994).
This was a tragic occurrence. The Court has great sympathy for the grief suffered by the plaintiffs over the loss of their son. However, the condition presented by the defendant's bluff in question was open and obvious, and the distraction or forgetfulness exception doctrine is inapplicable in the instant case. Defendant owed no duty of care, and thus, there was no negligence.[15]
*962 Having found no material issues of fact regarding the open and obvious danger of the accident bluff, and that decedent's alcohol consumption was not a reasonable foreseeable distraction from appreciating the danger of the bluff, the Court will grant summary judgment to the defendant as a matter of law.

ORDER
In accordance with the memorandum filed herein this date,
IT IS HEREBY ORDERED that defendant's motion for summary judgment (# 14) be and is GRANTED. Judgment is hereby entered for defendant and against the plaintiffs on the merits of the plaintiffs complaint. This cause of action is hereby DISMISSED and removed from the Court's trial docket of May 6, 2002.
NOTES
[1] Pursuant to local rules, although the motion package was not physically received by the Court until May 7, 2001, it is filed as of the date of its notice, March 26, 2001.
[2] The plaintiffs admit all of the defendant's statement of uncontroverted material facts except for six (6) points to which the plaintiffs make a general denial. Although the plaintiffs general denial of these six (6) points are not in compliance with Local Rule 4.01(E), the Court will not summarily overrule these denials but will address same.
[3] The Court's recitation of the determinative facts are supported by the evidentiary record filed by the parties, including but not limited to, affidavits, depositions, responses to interrogatories, photographs, etc. In certain instances, when necessary, the Court will cite to a specific exhibit.
[4] In order to fully understand and appreciate the layout of the relevant area of defendant's campus and the location (relative to the campus) of the accident site, reference to defendant's Exhibit 5 (Dixon Affidavit) and affidavit exhibit A is necessary.
[5] The other two students, Leah Roberts and Andy Garrett, left after taking the group to the bluff.
[6] At the time of the accident, there were five (5) large signs posted warning of the dangers of the bluffs and stating in large letters: DANGER DO NOT PROCEED BEYOND THIS POINT. The signs are two (2) feet wide and one and one-half (1½) feet tall with yellow lettering on a brown background. These signs were along a known trail that ran along the western edge of the campus in the area from the Chapel Green to the Writer's Cabin. Defendant's Exhibit D to Dixon Affidavit accurately shows one of these signs. There is also a fence barrier in the same area.
[7] Where exhibits are duplicative, in some instances, the Court may refer to only one of the parties exhibit. This is simply for purposes of judicial efficiency.
[8] The Great River Road is a well-known and well-traveled automobile and bicycle roadway that runs along the Mississippi River to Elsah's Landing.
[9] The defendant's statement of uncontroverted material facts contains thirty-seven (37) separately numbered paragraphs containing factual statements and the source of evidentiary support in the record. Plaintiffs appear to dispute paragraphs 7, 16, 19, 22, 24, and 27.
[10] Mr. Pratt had been Mayer's roommate at the time of the accident.
[11] The parties agree, and the Court concurs, that in this diversity case, the substantive law of Illinois applies.
[12] On the student newspaper article exhibit submitted by the plaintiffs (Exhibit 7), a line appears to the right of this paragraph. The Court assumes that this mark was intentionally made to bring the Court's attention to this particular paragraph since it relates to alleged alcohol consumption by students at Principia College.
[13] The school's no-alcohol policy is reiterated throughout the application materials and prospective students must sign a no-alcohol pledge on the application itself to be considered for admission to the school.
[14] Given the circumstances of this case, Mayer most likely would be considered an invitee under Illinois law. Although the defendant affirmatively discouraged its students from visiting the bluffs and this particular bluff was not on the campus proper, the bluff was still on defendant's property and Mayer was a student of defendant and presumably was lawfully on the bluff, in the sense that he was not a trespasser.
[15] Even applying the more traditional duty analysis forecloses a finding of a duty of care owed. Not only having found that the open and obvious nature of the danger presented by the cliffs precludes a finding of reasonable foreseeability of injury, placing a duty upon defendant would create a considerable practical and financial burden upon the defendant. The evidence before the Court indicated that the boys deliberately bypassed the warning signs and the fencing already in place. Mr. Eubanks testified that more signs would not have stopped them from going to the bluff. More importantly, defendant owns approximately 2600 acres of land predominantly consisting of an elevated woodland area above the Mississippi River. Most of this acreage is kept in its natural state. To require the defendant to barricade all the bluffs, including the accident bluff, and erect additional signs on this much acreage is a burden of tremendous magnitude. To erect such barricades and fencing would undoubtedly destroy the natural beauty of these bluffs and curtail the public's appreciation of such (ever decreasing) primitive and naturally maintained land. Concern for the degradation of the natural splendor of the bluffs far outweighs the need to additionally warn defendant's students of the blatant danger of visiting a bluff remote from the campus proper. See, Bucheleres, 216 Ill.Dec. 568, 665 N.E.2d. at 836.